Hon. Richard A. Jones

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOHN YIN,<br><br>Defendant. | NO. CR16-314RAJ<br><br>GOVERNMENT'S SENTENCING RECOMMENDATION<br><br>DATE: April 14, 2017 |

Comes now the United States of America, by and through Annette Hayes, United States Attorney for the Western District of Washington, and Susan M. Roe, Assistant United States Attorney for said District, and files this pleading to assist the Court at sentencing.   The government has no objections to the facts and calculations contained in the PreSentence Report facts and, at this time, understands that the only disputed guideline issue is the application of the specific offense characteristic increase for sophisticated means.

*Introduction*

On December 2, 2016, Mr. Yin entered guilty pleas to a two count Information containing charges of one count of Wire Fraud and one count of Conspiracy to Defraud the Government.  The two counts address the systemic and sophisticated fraud Mr. Yin, his employer, and his customer restaurants engaged in to cheat state, local and federal taxing authorities.

*Conduct Underlying the Guilty Plea*

For nearly a decade, JOHN YIN has been the sole source of Profitek (POS) system in Washington State which he marketed, sold and serviced to retail and restaurants Profitek Software is owned by InfoSpec, Inc., a company based in Vancouver, British Columbia, Canada.  The corporate website lists the following information:  Profitek is a leading software development company specializing in Point-of-Sale (POS) solutions for the hospitality and retail industries.  The company is based in Canada, has two offices in China, and a growing dealership network across North America.  Profitek claims to be the first POS solution in North America to provide dual language operation and, in this investigation, the software used English and Chinese languages.[1]

Businesses use Point of Sale (POS) computer systems to keep track of dates and times, customers, servers, tables, orders, payments and refunds.  All transactions are recorded in a database maintained by the POS software in real-time.

State, Local and Federal taxing authorities allow businesses the option of predicating their tax burden on calculations derived from the electronic database maintained by the POS system.  As with any business record, the electronic sales data must be complete, accurate, and must be furnished to the agencies on request in case of audit.

---

[1] Concerningly, Mr. Yin continues to be employed by Profitek, selling the same POS software to restaurants.

GOVERNMENT'S SENTENCING
RECOMMENDATION/YIN
CR16-314RAJ  - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*Background and History of Profitek and RSS in Canada*

From 2000 to 2008, InfoSpec Systems Inc., which created and marketed the Profitek POS software, was investigated by the Canadian Revenue Agency for creating and marketing an accompanying software – its own Revenue Suppression Software (RSS or "zapper"). Its RSS was available to Profitek clients so they could delete cash transactions from the system, thereby under-reporting revenue and income for tax purposes. Pius Chan, president of InfoSpec, and others, were criminally charged and prosecuted.

According to Canadian court documents and news articles, Pius Chan and InfoSpec sold zappers to restaurants knowing the programs would be used to facilitate tax evasion. InfoSpec initially was charged with fraud, four counts of evading income tax, and four counts of evading the Canadian Revenue Agency but was convicted only of the fraud count. In the proceedings, the court found that Pius Chan was the "directing mind of the corporation" and that he "intended to defraud the public by providing or distributing a zapper program that allowed customers to suppress income and thereby evade tax." In 2013, Mr. Chan's conviction was overturned on the narrow holding that the *sale* of the software was not illegal. In the opinion, the court wrote:

> I do not accept the Crown's submission that InfoSpec 'engaged in a course of dealings that was by its very nature dishonest.' InfoSpec participated in commercial transactions involving the sale of a computer program that is not prohibited by law; the restaurants got what they paid for. Whatever reasonable people might think about the propriety of such a sale, I am unable to say they would consider the vendor to have acted dishonestly.

*Regina v. InfoSpec Systems, Inc.* 2013 BCCA 333, Docket Number CA040174, date: 2013-07-17. The court opined that if Parliament considered a prohibition on zappers was necessary to thwart tax evasion, it should pass such a law. It did. In 2014, the Canadian Government enacted federal laws that businesses or individuals caught

GOVERNMENT'S SENTENCING
RECOMMENDATION/YIN
CR16-314RAJ  - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

using, developing, or selling RSS face a fine of between $5,000 to $1,000,000 and a prison sentence of up to five years.

It is noteworthy that the Canadian most similarly situated to Mr. Yin, that is, David Au, the Canadian authorized dealer of Profitek who sold the POS and RSS, was convicted of fraud.  His criminal conviction was not aside; neither were the sanctions for the restaurants prosecuted for using the RSS.

Following the enactment of the 2014 law, InfoSpec moved its RSS software operation offshore -- from Canada to China.  Mr. Yin associated with Pius Chan during this entire time, worked for InfoSpec during the criminal proceedings, knew about the Canadian criminal convictions and, most importantly, continued doing business with InfoSpec as it moved its illegal RSS operation to China in spite of the illegality of the business.   Moreover, there is some evidence of a personal relationship between Mr. Yin and Mr. Chan.  For instance, Mr. Yin's 2010 bank records reflect four checks, totaling $3,900.00, written by Mr. Yin to Mr. Chan which were deposited into Mr. Chin's personal, not business, bank account.

Also in 2013, the State of Washington enacted Senate Bill 5715, codified at RCW 82.32.290, which prohibited the mere possession as well as the use of automated sales suppression software (RSS or zappers).

*This Investigation and John Yin's Role in the Fraudulent Scheme*

During routine business audits performed by the Washington State Department of Revenue (DOR) in the past few years, auditors noted several restaurants and a few other businesses that both used the Profitek POS system and reported unusually low cash sales. Auditors visited the restaurants anonymously, paid cash for their meals, and later reviewed the business' proffered purportedly true and complete sales records for accuracy.  Several of the suspected establishments had deleted records relating to the auditors' cash transactions.  These businesses bought their POS and revenue suppression software through John Yin and even consulted with Mr. Yin, as needed, during their

GOVERNMENT'S SENTENCING
RECOMMENDATION/YIN
CR16-314RAJ  - 4

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

1  audits.  Government officials learned the identity and active role of John Yin from his

2  customers, in particular, from the owner (YL) of a successful Eastside restaurant (See

3  Plea Agreement, paragraph 8, page 6, line 20 *et seq*.).

4       During that audit, YL provided initial records and reports to DOR, encountered

5  difficulty in accessing additional records, then called Mr. Yin to help print out the reports

6  that DOR staff had requested.  Mr. Yin came to the restaurant for a day and, with DOR

7  staff present, attempted to generate reports from the Profitek system.  Mr. Yin claimed he

8  was unable to generate the reports while in the restaurant and he told the DOR personnel

9  that he would log into the restaurant's POS system remotely and email the reports.  The

10  next day, Mr. Yin emailed false reports to DOR.

11       Only when DOR personnel advised YL that the submitted records were

12  untrustworthy, did she admit the longtime use of the Profitek RSS.  YL demonstrated the

13  RSS to DOR and acknowledged cheating on taxes for years 2010 through 2013.  The

14  total amount of unpaid state and federal taxes for the four years has been assessed at

15  $910,324.50.

16       As part of the investigation, an Internal Revenue Service Special Agent, posing as

17  a POS and RSS customer, spoke and met with Mr. Yin.  Mr. Yin expressed reluctance to

18  discuss the zapper over the phone, but said it came from China, and that he

19  communicated with the RSS developer in China only through email   Mr. Yin further

20  explained that the Chinese developer would provide the customer with bank account

21  information, the customer would wire funds into the account, and the developer would

22  email the software to the customer..  He told the agent that the cost was approximately

23  $700 and once payment was secured, the agent would receive the "cash management"

24  software (zapper) by email.   Mr. Yin also said the RRS software was very sensitive and

25  neither he nor Profitek would touch it but he offered to show the agent how to use the

26  zapper and the two agreed to meet at a restaurant using it.

27       Several days later, they met for nearly two hours at a customer restaurant using the

28  Profitek POS and RSS.  Mr. Yin showed the POS system to the agent and the two

GOVERNMENT'S SENTENCING
RECOMMENDATION/YIN
CR16-314RAJ  - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    discussed the RSS in detail.  Mr. Yin reiterated that he sold the Profitek POS, denied

2    selling the RSS directly, and reviewed how to order it. Mr. Yin explained the zapper and

3    its instructions included directions on activating the RSS.  Mr. Yin explained that each

4    application was tied to a specific telephone landline that could not be transferred to

5    another line. Mr. Yin vouched for the RSS dealer's reliability and said that every one of

6    his clients who transferred money received a working version of the RSS.

7         Mr. Yin told the agent that he serviced the RSS for his clients, that he accessed

8    their accounts remotely from his home computer, that he had facilitated the sale of RSS

9    for 15 years, and said the customer restaurant had been using RSS for the past eight years

10   or so.[2]

11        In a subsequent meeting, Mr. Yin delivered a copy of the POS system along with

12   the email address in China.  He advised that, although delivery of the zapper usually

13   occurred within two weeks, his customers recently had complained of delays.

14        This investigation continued with a search of Mr. Yin's emails which confirmed

15   that he directed his customers to the Chinese zapper developer, that he shepherded them

16   through the purchase process, and that he assisted them when they needed help with the

17   program.

18        Searches, including of his home office, yielded a list of dozens of his restaurant

19   customers, many of which bought and used the zapper program.

20        It is apparent that, in addition to the POS systems, Mr. Yin facilitated the sale of

21   the Profitek zappers to cusomters which were successful in promulgating false and

22   fraudulent business financial records, to hide cash sales and to underpay taxes.

23    //

24

25   //

26

27
_____

28   [2] This restaurant is not one of the nine included in the Plea Agreement.

GOVERNMENT'S SENTENCING
RECOMMENDATION/YIN
CR16-314RAJ  - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

***Sentencing Considerations***

*Sentencing Guidelines Calculations*

The following guideline references may assist the Court at sentencing.  As set forth within the Plea Agreement (See, Paragraph 11) the parties agrees that:

- Mr. Yin's two counts of conviction group (USSG § 3D1.2);

- His base offense level is seven (7) (USSG § 2B1.1(a)(1);

- The level is increased sixteen (16) levels based on the agreed loss amount (USSG §  2B1.1(b)(1)(I)); and

- Mr. Yin is entitled to the three (3) level Acceptance of Responsibility reduction (USSG § 3E1.1(a) and (b)).

The parties reserved the right to argue the applicability of other guidelines.

The government and the United States Probation Officer urges the applicability of a two (2) level increase for sophisticated means pursuant to United States Sentencing Guidelines Section 2.B1.1(b)(10).

Application Note 9(B) in the USSG Commentary addresses the Sophisticated Means Enhancement:

> For purposes of subsection (b)(10)(C), "sophisticated means" means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. For example, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means.

Mr. Yin was the purveyor and servicer of a complex computer program designed to efficiently delete business records and automatically produce a complete set of false business record. The false business records promulgated gave no hint of being anything other than true and accurate.   Mr. Yin's zapper computer program was designed and

GOVERNMENT'S SENTENCING
RECOMMENDATION/YIN
CR16-314RAJ - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 used solely for the purpose of cheating on taxes by producing the corrupt records. Those
2 records appeared perfectly authentic to city, county and federal governments. The corrupt
3 records produced by Mr. Yin's product were so professional and complete that the use of
4 the zapper was first confirmable only when a customer admitted its use.  The zapper
5 program sold and serviced by Mr. Yin has been successfully used surreptitiously for
6 several years.

7 　　　　Mr. Yin's zapper product was activated only when used on a specific, uniquely
8 identified computer.  That very narrow activation rendered the zapper program and any
9 copies useless elsewhere - which was a highly effective way of thwarting detection.  For
10 instance, law enforcement received a thumb drive with the zapper program, however, it
11 was unworkable once removed from the specific computer and its dedicated landline.

12 　　　　As Mr. Yin well knew, his employer and an authorized sales representative were
13 prosecuted in Canada for use and sale of the zapper software.  Mr. Yin worked with the
14 company throughout that time.  One response to the Canadian prosecution was that the
15 company moved the zapper software production out of Canada and relocated it to China.
16 Mr. Yin followed the source of the program to its new location in China; he himself
17 employed the new email address which used a Chinese server, and he provided the new
18 email address to his customers.  A Chinese email account is nearly untouchable by law
19 enforcement and its records are unobtainable by the United States or Canada.  As a result,
20 most of the electronic communications regarding purchase and payment are concealed
21 overseas. The move to China was undertaken to defeat law enforcement involvement and
22 to continue peddling the fraudulent schemes in the United States and Canada.

23 　　　　Based on the above, the two level enhancement for sophisticated means is
24 appropriate in this case.  "Conduct need not involve highly complex schemes or exhibit
25 exceptional brilliance to justify a sophisticated means enhancement," *United States v.*
26 *Jennings,* 711 F.3d 1144, 1145 (9th Cir.2013), although this computer program itself was
27 quite complex and the roundabout way of ordering and paying for it was sophisticated.
28 Courts cited the "high level of planning and concealment of a defendant's theft," *United*

GOVERNMENT'S SENTENCING
RECOMMENDATION/YIN
CR16-314RAJ  - 8

1    *States v. Tanke,* 743 F. 3d 1296 (9th Cir. 2014), and the "complicated and fabricated

2    paper trail [which] made discovery of his fraud difficult*." United States v. Horob*,735

3    F.3d 866,  872  (9th Cir. 2013) when affirming this application.

4           The high level of effort Mr. Yin and his conspirators expended to conceal their

5    and their clients' fraud, the efficacy of the zapper program itself, and the complicated

6    electronic trail all point to this fraud being committed and hidden in a sophisticated

7    manner.

8

9           *Restitution*

10          Mr. Yin agrees with the computation of taxes owed by his customer restaurants to

11   Washington State and the U.S. Government. (See, Plea Agreement, Paragraph 7).  Those

12   restaurants are the nine establishments included in the Statement of Facts and were

13   chosen because DOR had completed these audits before the entry of Mr. Yin's guilty

14   plea.[3]  The $3,445,589.00 is the total only of the Washington State sales tax and the

15   federal income tax due from the skimmed cash receipts. Other possible unpaid taxes,

16   such as social security and Medicare, are not included in this calculation.

17          Mr. Yin likely did not reap the obvious benefits of the zapper scheme, that is, he

18   probably did not receive [unreported] cash from the restaurants.  Rather, his benefit was

19   that he kept his job as the sole authorized representative of Profitek in this state, thereby

20   making the best living of his life.

21          As part of Mr. Yin's Plea Agreement, and in recognition that he personally did not

22   become enriched by the fraudulent scheme, the government drafted the Plea Agreement

23   to make the restitution an imperfect "joint and several" obligation with his customer

24   restaurants.  By adding the language "with credit for any amounts already paid" (See Plea

25   Agreement, page 4, line 23), the government agrees that the amounts paid by the

26   restaurants to Washington State DOR and the Department of Treasury, arising out of the

27   _____

28   [3] Although the audits are complete, not all of the restaurants are aware of the audit results.

GOVERNMENT'S SENTENCING
RECOMMENDATION/YIN
CR16-314RAJ  - 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  audits and pursuant to administrative, civil or criminal proceedings thereof, should be

2  credited to Mr. Yin's restitution obligation.   We anticipate that the individual restaurants

3  will not be criminally prosecuted federally.  Local criminal prosecution as well as civil or

4  administrative tax cases may result.

5       While the burden will be on Mr. Yin and his counsel to ensure he receives credit

6  for those payments, the government has recommended specific avenues for tracking the

7  payments and has offered some assistance in insuring his ability to obtain the

8  information.

9

10  *Consideration of Title 18, USC, Section 3553 Factors*

11       The Court should "impose a sentence sufficient, but not greater than necessary, to

12  comply with" the four identified purposes of sentencing: just punishment, deterrence,

13  protection of the public, and rehabilitation. A sentencing court is then directed to take

14  into account "the nature and circumstances of the offense and the history and

15  characteristics of the defendant," as well as "the need for the sentence imposed" to serve

16  the four overarching aims of sentencing. §§3553(a)(1), (2)(A)–(D);). *Pepper v. United*

17  *States*, 562 U. S. 476, 487–489 (2011). *Gall v. United States*, 552 U. S. 38, 50, n. 6 (2007

18       The factors listed in Title 18, United States Code, Section 3553(a) are: (1) the

19  nature and circumstances of the offense; (2) the history and characteristics of the

20  defendant; (3) the need for the sentence to reflect the seriousness of the offense, to

21  promote respect for the law, and to provide just punishment for the offense; (4) the need

22  for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the

23  sentence to protect the public from further crimes of the defendant; (6) the need to

24  provide the defendant with educational and vocational training, medical care, or other

25  correctional treatment in the most effective manner; (7) the kinds of sentences available;

26  (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted

27  sentence disparity among defendants involved in similar conduct who have similar

28  records.

1   In this case, the nature and circumstances of the offense have been set out above

2   and result in a picture of a long-running tax fraud scheme made feasible in Washington

3   State by Mr. Yin.  His history and characteristics reveal a man who has a history of minor

4   offenses, including thefts, spanning 30 years.  He committed his 2007 theft from Sears

5   while a Sears employee so, understandably, he was fired.  Generally, Mr. Yin has been in

6   a financially precarious position and only the Profitek job with its accompanying zapper

7   software has brought him financial stability.  It is true he did not get rich using zappers

8   but he certainly improved his economic standing by selling and servicing the fraud for

9   several years.  It is also noteworthy that the Canadian prosecutions did nothing to turn

10  him away from participating in the illegal scheme.

11  The next three factors, (3) the need for the sentence to reflect the seriousness of

12  the offense, to promote respect for the law, and to provide just punishment for the

13  offense; (4) the need for the sentence to afford adequate deterrence to criminal conduct;

14  (5) the need for the sentence to protect the public from further crimes of the defendant,

15  may be grouped together.  The defendant's Plea Agreement limits the conduct and

16  restitution to just nine of his dozens of customers and the government firmly stands with

17  that limitation.  But the Court may note that this Profitek criminal scheme involved many

18  more businesses – both Mr. Yin's customers locally and many other restaurants using

19  Profitek and its zapper throughout the United States.

20  Use of the zapper to avoid taxes affects all layers of society.   Our governments,

21  local, state and federal, rely on taxes to fund even the most basic programs benefitting

22  our residents, from public health and law enforcement to food stamps and public housing

23  to public transportation, environmental protections and land use.  Our governments can

24  only provide needed services when taxes are paid.

25  In addition to affecting the government's ability to provide services, the failure to

26  pay taxes by some, such as Mr. Yin's customers, unfairly increases the burden on honest,

27  law-abiding, tax-paying others.  Those citizens are harmed twice – reduced government

28  services and an increased tax burden.

GOVERNMENT'S SENTENCING
RECOMMENDATION/YIN
CR16-314RAJ  - 11

Prosecutions for the use of an RSS are rare, perhaps because the technology is new and proof is difficult to find.  One result is that, while use of zappers may be widespread in certain, cash-rich businesses, this prosecution of a supplier is one of the first in the nation.  This case may set a benchmark for how seriously this conduct is viewed.  These facts, too, are appropriate for the Court to consider when assessing the seriousness of this crime, how best to promote respect for the law, and the need to deter others from engaging in this conduct.

There are no known similarly prosecuted defendants in the federal system so the criterion of the need to avoid unwarranted sentence disparity does not apply. Restitution is addressed previously in the pleading and the government notes the Mr. Yin is receiving a significant benefit in the Plea Agreement's structuring of the restitution obligation.

This conviction mandates a prison term. *USSG § 5C1.1(f)*.  Mr. Yin appeared to underplay the seriousness of his offense when he advised the U.S. Probation Officer that he would request a sentence of credit for time served.  He was processed by the U.S. Marshal's Office but has not served any time.

The last criterion is the need to provide the defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner.  Mr. Yin is 66 years old with strong IT skills.  He likely does not need vocational or educational training.  He has medical issues typical of his age which have not prevented him from working or living a full life, including a fairly recent second marriage.  The U.S. Bureau of Prisons is well equipped to handle such medical conditions and does so regularly.

### *Conclusion and Sentencing Recommendation*

Considering the above facts, the government agrees with the United States Probation Office and recommends a term at the low end of the applicable guideline range, that is, 46 months in prison, supervised release of three years, $200 in Special

GOVERNMENT'S SENTENCING
RECOMMENDATION/YIN
CR16-314RAJ  - 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Assessments, restitution as agreed, and terms and conditions as recommended by the U.S.

2  Probation Department.

3          DATED this 4th day of April, 2017.

4

5                                          Respectfully submitted,

6                                          ANNETTE HAYES

7                                          United States Attorney

8                                          /s/ Susan M. Roe

9                                          SUSAN M. ROE

10                                         Assistant United States Attorney
                                           700 Stewart Street, Suite 5220

11                                         Seattle, WA 98101-1271
                                           Telephone:    (206) 553-1077

12                                         E-mail: susan.roe@usdoj.gov

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GOVERNMENT'S SENTENCING                                    UNITED STATES ATTORNEY
RECOMMENDATION/YIN                                        700 STEWART STREET, SUITE 5220
CR16-314RAJ  - 13                                         SEATTLE, WASHINGTON 98101
                                                               (206) 553-7970

# CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the attorney(s) of record for the defendant(s).  I hereby certify that I have served the attorney(s) of record for the defendant(s) that are non CM/ECF participants via e-mail and/or telefax.

*s/ Lissette Duran*
LISSETTE DURAN
Paralegal Specialist
United States Attorney's Office
Western District of Washington
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Telephone:    (206) 553-7234
Fax:               (206) 553-2502
E-mail:  Lissette.I.Duran@usdoj.gov

GOVERNMENT'S SENTENCING
RECOMMENDATION/YIN
CR16-314RAJ  - 14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970