1          HONORABLE RICHARD A. JONES

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT FOR THE
                     WESTERN DISTRICT OF WASHINGTON
                                AT SEATTLE

9    UNITED STATES OF AMERICA,

10                              Plaintiff,        NO. CR16-314RAJ

11         vs.                                    JOHN YIN'S SENTENCING
                                                  MEMORANDUM
12   JOHN YIN,

13                              Defendant.

14

15        Defendant, John Yin, respectfully submits this Sentencing Memorandum including

16   corrections to the U.S. Probation Office's Presentencing Report ("PSR") to aid this Court in

17   determining an appropriate sentence.  We suggest a sentence of two years of probation and 500

18   hours of community service.

19                              **INTRODUCTION**

20        John Yin, 66 years old, comes before this Court as a humbled man.  Many times when

21   John was selling the Point of Sale Systems (POS) for InfoSpec Inc., he was able to make the

22   sale legitimately because the product was one the restaurants valued and needed.  However,

23   JOHN YIN'S SENTENCING MEMORANDUM - 1
     *CR16-314RAJ*

                                          **LAW OFFICE OF KIRK C. DAVIS, PLLC**
                                                  1218 Third Ave. Ste. 1000
                                                  Seattle, Washington 98101
                                          Ph.(206) 684-9339  Fax(206) 260-3685

sometimes, the restaurant owners would ask for software to reduce their cash sales and help them in underreporting their income to the State of Washington.

John told himself that this was something all the restaurants were already doing. He noted most restaurants in Chinatown had two sets of books and that it was so common it could not be that serious. This was a terrible mistake and one for which John will pay the rest of his life.

## BACKGROUND

## A.    PERSONAL BACKGROUND

John was born into a military family in Taiwan in 1950. His father was a sergeant in the navy and his mother stayed at home to take care of her five children. John's father did not make enough money to support the family, so John, as the eldest child, had to leave school early to take care of his mother and his four brothers and sisters. John's childhood lacked material comforts, but he describes his upbringing as warm.

When John turned 20, he did his two years of compulsory military service. After leaving the service, he started thinking about what more he could do to help his family. He got a job as crewmember on a cargo ship through a friend of his father. John sent all of his earnings back to his mother in hopes that his family could have a better life. With the voyages of the ship around the globe, John was able to see ports in many different countries. The other crew though always spoke glowingly about America. After three long work filed years on the cargo vessel, John left the ship when it made port in Long Beach, California. John realized he made a mistake and tried to go back to the ship, but the vessel had already left. As John was

JOHN YIN'S SENTENCING MEMORANDUM - 2
*CR16-314RAJ*

alone, he went to New York because he had been told there was a large Chinese population there.

It was not long before John secured a job doing cleaning and dishwashing at a Chinese restaurant. He did not make a lot of money, but he was able to send almost all his money home to his mother. One of the Chinese restaurateurs told John to go to Minnesota to get a better job in a restaurant there, so he did. Unfortunately, once there, John got news his sister died. This started a long period of smoking and drinking for John. He was still working at the restaurant jobs and sending money home, but he became depressed.

John returned to Taiwan to help care for his mother, but she was in poor health and died in 1982 when she was only 55 years old. While back in Taiwan, John met and married an American woman. However, he had to go back to work in the restaurants to help support his pregnant wife after they moved back to the United States. They initially settled in California, but moved again to Minnesota so John could go back to the restaurants he knew. John got a second job when his wife became pregnant with their second child. The job was cleaning up the oil and grease from the hoods of ventilation fans in the restaurant's kitchen after the restaurant closed for the evening.

John and his family struggled to survive financially for many years. John and his wife chose to come to Seattle because she got tired of the cold winters in Minnesota. John learned more English and slowly got a high school degree and then an AA degree in 2000.
 John's first wife left him to take her children to California to stay with her mother. John was sad, but thought it was better for them because they had more financial stability than he could provide for them. They were legally divorced in 2007.

JOHN YIN'S SENTENCING MEMORANDUM - 3
*CR16-314RAJ*

**LAW OFFICE OF KIRK C. DAVIS, PLLC**
1218 Third Ave. Ste. 1000
Seattle, Washington 98101
Ph.(206) 684-9339  Fax(206) 260-3685

John began selling InfoSpec POS systems, but he was also working at a restaurant at the same time because he could not make enough money selling the systems.

In 2011, John met his current wife.  He says that she saw he was old and lonely and felt sorry for him.  After she graduated from the University of Washington, she was going to go back to Taiwan, but she knew John's health was not good, so she told John she would stay and care for him.  They got married in 2014.

John's story is not that of a Horatio Alger.  He is an ordinary man who made an extraordinary mistake.  This is certainly not the first time John has committed a crime.  When he was drinking, he was charged with DUI and he also had a couple of shoplifting incidents. However, he has no significant criminal history.

**B.    OFFENSE CONDUCT**

John was aware of the tax evasion of restaurant owners of for many.  In China, businesses frequently avoid taxes.  That culture was transported to the United States in Chinatowns across the country along with the immigrants from China.  As one sociologist observed:

> Anyone familiar with Chinatown realizes that an underground
> economy has long existed there.  Restaurants, garment factories,
> and other businesses operate regularly with two sets of books in
> order to underreport income and evade taxes: the workers and
> suppliers are paid off the books.  Workers are not expected to
> report their full income either .  .  .

Peter Kwong, *The New Chinatown* 79 (Hill and Wang, Rev. 1996).

In fact about 10 million of China's 27 million self-employed  businesspeople have not even registered to pay taxes and eight out of ten transactions at major department stores in

JOHN YIN'S SENTENCING MEMORANDUM - 4
*CR16-314RAJ*

**LAW OFFICE OF KIRK C. DAVIS, PLLC**
1218 Third Ave. Ste. 1000
Seattle, Washington 98101
Ph.(206) 684-9339  Fax(206) 260-3685

China are in cash.  William Gamble, *The Middle Kingdom Runs Dry: Tax Evasion in China*, Foreign Affairs (November/December 2000).

This is the world that John entered when he started as a dishwasher.  He was aware that the owners of many Chinese restaurants were keeping two sets of books and underreporting their income.  Obviously, this cultural experience does not excuse the conduct.  But, the normalization of it helps explain why it was not taken as seriously as it should have been.

When John began selling the POS system from InfoSpec, some restaurant owners would ask him for the software that could suppress their cash sales.  John would not normally initiate the discussion of the software and he believed the business owners would talk amongst themselves to find out about the software.  John tried to distance himself from the sale of the software.  He would tell the restaurant owners the email they needed to use to request the program and would tell them the price, which was $650.00.  The owners of InfoSpec, Pius Chan and his wife, Cindy Chan, told John he should raise the price of the program and take a cut.  However, John was trying to distance himself as much as possible from the illegal conduct and he did not take a cut; instead, he merely passed on the email and the price and tried to stay out of it.

John's sale of the software was discovered by the government when it audited the books of a restaurant called Facing East in Bellevue, Washington.  The owner, Yu-Ling Wong, admitted she had software that enabled the cash transactions to be eliminated and set to a certain level such as 7% of gross receipts.  (Affidavit for Determination of Probable Cause filed in *State of Washington v. Yu-Ling Wong*, 16-1-00179-0, page 3)  Ms. Wong was charged with Theft in the First Degree (1 count), Unlawful Use of Sales Suppression Software (1 count) and

LAW OFFICE OF KIRK C. DAVIS, PLLC
1218 Third Ave. Ste. 1000
Seattle, Washington 98101
Ph.(206) 684-9339  Fax(206) 260-3685

Filing a False or Fraudulent Tax Return (21 counts).  (Information, *State of Washington v. Yu-Ling Wong,* 16-1-00179-0)

A special agent posed as a potential customer of the POS system John was selling and, as usual, John did not bring up the subject of the illegal software.  Instead, the undercover agent brought it up and had to keep pressing John to get him to reveal that the illegal software came from China through an email.  John further indicated he really had nothing to do with it and asked the agent why he really needed it.  Indeed, he argued against the need for it and tried not to discuss it.

It is clear from viewing the videos, that John had little idea as to taxes because when the undercover agent told him he was from California, John wanted to make sure he was paying the appropriate taxes.  He asked the undercover agent for advice on how he should deal with the tax consequences in California.  The agent quickly brushed John off and told him he needed to take care of his own business.  It was, however, a revealing moment because it showed John was not at all sophisticated.

This lack of sophistication was confirmed by an investigator from the Washington State Department of Revenue, Jerome Salido, who when he saw John trying to help Ms. Wong, observed that John was far from a computer expert judging from the way he navigated the POS system and used the mouse.  Mr. Salido also observed that John appeared unfamiliar with basic software for running small businesses.

On July 9, 2015, a search warrant was served on John Yin's home by the Washington State Attorney General's Office Criminal Justice Division in coordination with the Internal Revenue Service Criminal Division.  John admitted he sold the illegal software to the agents

**LAW OFFICE OF KIRK C. DAVIS, PLLC**
1218 Third Ave. Ste. 1000
Seattle, Washington 98101
Ph.(206) 684-9339  Fax(206) 260-3685

who came to his home.  He told them he did not profit from the sale of the illegal software and made an income of barely $40,000.00 a year.

## C.   CONDUCT AFTER DISCOVERY OF THE OFFENSE

After John came to the attention of law enforcement, he endeavored to cooperate with the government.  He offered to assist the government in going after Pius Chan and Cindy Chan.

Unfortunately at the first proffer session John did with the government, he pointed out that it might be difficult for him to introduce an undercover agent to Pius Chan and Cindy Chan as that person would be a stranger.  John later reconsidered that and offered to assist the government in any way they wanted.  He even contacted the Chans and had them come to the United States where they admitted to him they were continuing to ship the illegal software into the United States.  Had John been wearing a wire, he could have made the case for the government.  He realized this and John again offered assistance to the government and told them he could help them get the main culprit and supplier of the illegal software, but the government chose to ignore him.  The government was not willing to work with an eager partner because John made a mistake in not immediately agreeing and understanding the government's suggestion in their first meeting.

In an effort further cooperate with the government, John's wife conducted her own undercover investigation.  She found several Thai restaurants were using a similar POS system to the one her husband sold and were eliminating cash transactions.  She relayed this information to the government, but the government was again uninterested in doing any investigation and uninterested in giving John the possibility of a sentence with a cooperation agreement.

JOHN YIN'S SENTENCING MEMORANDUM - 7
*CR16-314RAJ*

LAW OFFICE OF KIRK C. DAVIS, PLLC
1218 Third Ave. Ste. 1000
Seattle, Washington 98101
Ph.(206) 684-9339  Fax(206) 260-3685

Mr. Yin has asked to start paying his restitution right away, but has been told by Probation and the United States Attorney that he cannot start to pay until restitution is set by the Court.  John does not have $3 million in assets because unlike Ms. Wong being prosecuted in State Court, he is not a successful restaurant owner, so he cannot afford to pay all of the restitution; however, that does not diminish the fact that he wants to pay and has offered to do so.

## SENTENCING CONSIDERATIONS

### A.    GUIDELINES CALCULATIONS

The sentencing factors that apply as outlined in the Plea Agreement.  (See, Paragraph 11) The base level offense is seven, a 16 level increase based upon the loss amount and a three level acceptance of responsibility for a total of 20.

*Criminal History Category I.*

John is in Criminal History Category I with 1 point.  John entered a guilty plea to Theft in the Third Degree, a misdemeanor, on August 22, 2007.  He was not under active supervision of any sort and was not assigned a probation officer.  The Court only had jurisdiction over John for 24 months, and since Mr. Yin had no criminal law violations during the 24 months, the Court lost jurisdiction over him on August 22, 2009.  Although the Judge may have ordered the case closed in September, in actuality, the Judge had no authority to do anything but close it and there was no jurisdiction of the Court after August 22, 2009.

The government alleged that Mr. Yin's federal criminal conduct began sometime in 2009; however, they have not pinpointed an exact date in 2009.  Both the Information and Plea reflect that the government has no knowledge of when the conduct began in 2009.  Thus, there is no

JOHN YIN'S SENTENCING MEMORANDUM - 8
*CR16-314RAJ*

**LAW OFFICE OF KIRK C. DAVIS, PLLC**
1218 Third Ave. Ste. 1000
Seattle, Washington 98101
Ph.(206) 684-9339  Fax(206) 260-3685

evidence to suggest that Mr. Yin was on supervision or even under the Court's jurisdiction at all at the time the federal criminal conduct began.  In any event, the statute of limitations for Wire Fraud is five years and the Information filed by the government alleged the conduct took place five years prior to the filing of the Indictment on November 29, 2016.  Thus, the conduct in 2009 is not relevant for purposes of criminal history even if the government could establish it was ongoing before August 22, 2009, which they have not.

*Minor Role –*

John's role was minor pursuant to §3B1.2(b).  John is substantially less culpable than the average participant, yet he is the only one to have been charged in federal court.  The people who made the software and were profiting from the software have been completely ignored by the government. They are happily living their lives in Canada unperturbed by the John's fate.  The restaurant owners who profited more than anyone else and whose day-to-day activities propagated the fraud have faced no criminal consequences to date either.  Although Ms. Wong is about to face sentencing and that is why we urge this Court to delay John's sentencing.

Despite being substantially less involved in the conduct, John has received a conviction for a most serious offense.  He only had a general idea of the scope and structure of the criminal activity.  He did not participate in the planning or organizing of the activity.  He exercised no decision-making authority or influenced the exercise of decision-making authority.  Generally, the only thing John did was to provide the email address from which the restaurant owners could obtain their copy of the illegal software.  He did not typically install or maintain the illegal software except on a couple of rare occasions.  He is not an

**LAW OFFICE OF KIRK C. DAVIS, PLLC**
1218 Third Ave. Ste. 1000
Seattle, Washington 98101
Ph.(206) 684-9339  Fax(206) 260-3685

accountant or person sophisticated in financial matters.   Perhaps the most compelling reason for the reduction is that John did not directly benefit from the criminal activity. Accordingly, John should receive a 2-point reduction.

*There were no sophisticated means used by John to commit the offense.*

"Sophisticated means" pursuant to United States Sentencing Guidelines Section 2B1.1(b)(1) does not apply to John Yin.  John merely provided an email address and put the restaurant owners in touch with the makers of the software that deleted cash transactions on the accounts of the restaurant owners.  He did not know how the program worked nor did he help service it or modify it in any way.  He merely provided the email address to the owners of the restaurants and told them it was up to them to get the "program."  Mr. Yin did not write the code for the software.  He does not know computer languages.  Indeed, during the investigation, one of the agents noted he seemed to have problems manipulating a mouse on a computer.

The mere fact the program only worked on a specific computer does not mean it is designed to avoid detection.  This is a common tactic throughout the computer industry. Microsoft, for example, only allows the Windows program to be used on one computer and if you want to have it work on more computers you need to pay more money.  This is not because Microsoft is attempting to avoid detection of its software; instead, it is because Microsoft likes making money.

It is also not clear the software was particularly complicated; however, we would concede that it was effective in concealing cash transactions. Yet, it is really no different than the old scam of not reporting cash and keeping two sets of books.

JOHN YIN'S SENTENCING MEMORANDUM - 10
*CR16-314RAJ*

In any event, it is undeniable that Mr. Yin's role was minimal and not sophisticated.  Mr. Yin had no role in an "especially complex or especially intricate offense **conduct** pertaining to the execution or concealment of an offense."  (Application Note 9 (B) in the USSG Commentary)

Mr. Yin's **conduct** of providing an email address with not at all sophisticated.  It was an ordinary and everyday occurrence.  As Mr. Yin had no part in any of the arguably sophisticated means this factor does not apply to him.

The Court in *US v. Kraig* opined as follows:

> Although the conspiracy at issue here was complex, the sophisticated means enhancement **requires the sentencing court to look at the actions taken by the individual**. A defendant involved in a complex or repetitive tax conspiracy is not automatically given a sophisticated means enhancement if his or her personal involvement did not constitute sophisticated means.

99 F.3d 1361, 1371 (1996). (emphasis added)

Accordingly, as John was not sophisticated in his understanding or awareness of the scale of this fraud, did not participate in any fashion in making the program or even understand how it worked, there is no way he should be considered to have used "sophisticated means" when he provided an email address to restaurant owners.

As John receives a two-point reduction for his minor role in the offense, his offense level is 18 and his guideline range is 27-33 months.

**B. ANALYSIS of 18 U.S.C. § 3553(a) FACTORS**

The guidelines, as this Court knows, are merely advisory. *United States v. Booker,* 543 U.S. 220, 245, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).  While § 3553(a) analysis still starts

**LAW OFFICE OF KIRK C. DAVIS, PLLC**
1218 Third Ave. Ste. 1000
Seattle, Washington 98101
Ph.(206) 684-9339  Fax(206) 260-3685

with consideration of the guidelines, it is not supposed to end there.  *Rita v. United States,* 551 U.S. 38, 50, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007).   Accordingly, a sentence within the guidelines is not presumed to be reasonable.  *Gall v. United States,* 552 U.S. 38, 46, 50 (2007).  The guidelines are a starting point "but nothing more."  *United States v. Warner,* 792 F.3d 847, 855 (7th Cir. 2015).

An "individualized assessment" of each case rather than rote adoption of the guidelines is the appropriate role for the sentencing court.  *Warner,* 792 F.3d at 855; *United States v. Ferguson,* 831 F.3d 850, 857 (7th Cir. 2016) (application of guidelines "is not and never has been intended to be a substitute for individualized judgment").

The seven factors of § 3553(a) include (1) the nature of the offense and history and characteristics of the defendant; (2) the purpose of sentencing; (3) the kinds of sentences available; (4) the sentencing guidelines; (5) the policy statements issues by the Sentencing Commission; (6) the need to avoid unwarranted disparities among similar offenders; and (7) the need to provide restitution to any victims of the offense.

*1. The Nature of the Offense and the History and Characteristics of the Defendant*

John acknowledges his guilt.  It was indeed a knowing and willful violation of the law and nothing discussed in this section is meant to diminish the criminal nature of the offense.

John worked really hard for all of his life.  Most of his life has been spent doing manual labor.  Meeting his financial obligations and trying to take care of a growing family put pressure on John that led to some very poor decisions.  He committed some petty offenses and was not a model citizen in that respect.  However, he did his best to care for his family.

JOHN YIN'S SENTENCING MEMORANDUM - 12
*CR16-314RAJ*

**LAW OFFICE OF KIRK C. DAVIS, PLLC**
1218 Third Ave. Ste. 1000
Seattle, Washington 98101
Ph.(206) 684-9339  Fax(206) 260-3685

Although John's actions before the discovery of his offense were criminal, his attempts and his wife attempts to help the government and admittedly him as well, are laudable. John tried very hard to offer cooperation and his wife even offered evidence of other criminals the government did not even know about.

We also intend to submit letters at the time of sentencing showing John's good character. Overall, this factor should weigh in John's favor.

2.     *The Purpose of Sentencing.*

Each sentence imposed under the guidelines should be determined based on the relevant facts and circumstances, and designed:

> (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B)  to afford adequate deterrence to criminal conduct;
> (C)  to protect the public from further crimes of the defendant; and
> (D)  to provide the defendant with needed educational or vocational training,  medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

A long prison sentence for John does is not necessary to "reflect the seriousness of the offense" or "to promote respect for the law." The felony charges and collateral consequences, including the massive restitution burden and the federal government's press releases resulting in nationwide publicity about these proceedings have already settled a heavy weight on John's shoulders resulting in increased hypertension and many sleepless nights.

JOHN YIN'S SENTENCING MEMORANDUM - 13
*CR16-314RAJ*

**LAW OFFICE OF KIRK C. DAVIS, PLLC**
1218 Third Ave. Ste. 1000
Seattle, Washington 98101
Ph.(206) 684-9339  Fax(206) 260-3685

John immediately demonstrated his acceptance of responsibility as soon as he was contacted by government agents. *See United States v. Gardellini*, 545 F.3d 1089, 1091 (D.C. Cir. 2008) (downward variance to sentence of probation for I.R.C. § 7206(1) offense justified in part because defendant "cooperated with authorities and accepted responsibility for his crimes.")

The government has already achieved general deterrence by the press release and reference to the massive restitution bill with which the government plans to serve John.  John aided the government by an early guilty plea and did not require the government to put on its proof or bring in restaurant owners to testify against John, which leaves the government free to pursue others if they choose.

However, as it stands, John is the only person to face federal prosecution for the sale or use of the software.  There is no guarantee that others will be prosecuted and contribute to the over $3 million dollars that John needs to repay.  Thus,  the government has more than achieved substantial general deterrence goals without John having to serve time in a prison cell.

This factor too weighs in John's favor.

3.   *The Kinds of Sentences Available*

This Court has the authority and may exercise its discretion to consider a wide range of alternatives to the substantial prison term sought by the government.  18 U.S.C. § 3553(a)(3) and 3561(a)(1).  In fact, § 3553(a)(3) specifically directs consideration of sentences other than imprisonment.

a.   *A Sentence of Probation with A Special Condition of Community Service is Best.*

To sentence a 66-year-old man to multiple years in prison as the government is

JOHN YIN'S SENTENCING MEMORANDUM - 14
*CR16-314RAJ*

**LAW OFFICE OF KIRK C. DAVIS, PLLC**
1218 Third Ave. Ste. 1000
Seattle, Washington 98101
Ph.(206) 684-9339  Fax(206) 260-3685

1  requesting is an unwise use of resources.  A term of probation would satisfy the remedial goals

2  of sentencing and allow him to at least try and pay part of the restitution.  There is no doubt,

3  John will be working for the government for the rest of his life.  Just like when he started out in

4  work sending all of his money to his family, instead, now he will be sending all of his money to

5  Uncle Sam.

6          Community service is a "flexible, personalized, and humane sanction, a way for the

7  offender to repay or restore the community.  It is practical, cost-effective, and a fair – a 'win-

8  win' proposition for everyone involved.  Office of Probation and Pretrial Services,

9  Administrative Office of the U.S. Court, "Court & Community: An Information Series About

10  U.S. Probation & Pretrial Services: Community Service" (2005).

11          Certainly, John is not at a risk to reoffend.  He has learned his lesson.  Generally

12  speaking, offenders who are over 60 reoffend at just a 16-percent rate nationally.

13  http://www.ussc.gov/about/news/press-releases/march-9-2016.

14          John also has health concerns.  See attached letter from John's physician, Tom Chin,

15  MD who opined that John should not be incarcerated due to his diabetes, hypertension,

16  hyperlipidemia and right shoulder pain.

17      4.      *The Sentencing Guidelines*

18          The government bears the burden of proving by a preponderance of the evidence that

19  the defendant's conduct was sophisticated and that he was on supervision at the time of the

20  offense.  *United States v. Villasenor*, 977 F.2d 331, 336 (7th Cir. 1992) ("Factual matters

21  pertinent to the application of the guidelines must be proved to the sentencing court by a

22  preponderance of the evidence.")  The government cannot meet their burden to establish either

23  JOHN YIN'S SENTENCING MEMORANDUM - 15
*CR16-314RAJ*

of these enhancements.  Accordingly, neither enhancement proposed by the government nor the probation department applies.

5.    *Pertinent Policy Statements*

There are no pertinent U.S. Sentencing Commission policy statements.

6.    *The Need to Avoid Unwarranted Disparities Among Similar Offenders*

<u>Canadian Cases</u>:

The owners of InfoSpec and architects of the fraud, Pius Chan and his wife Cindy Chan, are left free to enjoy their lives and their money while others who sold or used their product suffer prosecution.  Mr. Chan has escaped punishment of any sort for his role when his conviction was overturned by the Canadian Court that determined the sale of the software was not illegal.  *Regina v. InfoSpec Systems, Inc.* 2013 BCCA 333, Docket: CA040174, Date: 2013-07-17.  None of the people who have been prosecuted for use of the software or sale of the software have been sentenced to as much time as the government is asking John to serve.

David Au, whom the government indicated in its sentencing recommendation as the "Canadian most similarly situated to Mr. Yin" received a very harsh 30-month sentence. *Regina v. Au,* 2011 BCSC 75, Docket: 25509, Date: 2011-01-24. The Crown had sought a sentence of four years in jail and pointed out that Mr. Au had continued to sell the InfoSpec software even when he was aware of the criminal investigation into his activities.  *Regina v. Au,* 2011 BCSC 75, Docket: 25509, Date: 2011-01-24.  The Court weighed this fact and that the audited losses from the 23 restaurants that sold the software amounted to $14,000,000 in sales against the his lack of any real criminal history and leadership role and concluded 30 months was appropriate.  *Regina v. Au,* 2011 BCSC 75, Docket: 25509, Date: 2011-01-24.

JOHN YIN'S SENTENCING MEMORANDUM - 16
*CR16-314RAJ*

Michael Roy, a software developer with Restro Terminal POS supplier in Quebec, with the help of his two sons, aided 28 restaurants in committing sales suppression frauds from 2002 to 2003.  *"Fines of More than One Million Dollars—A Father and His Two Sons Convicted for Tax evasion in Connection with the Zapper*," *News Release*, May 2, 2003 (online: http://www.revenu.gouv.qc.ca/eng/ministere/centre_information/communiques/ ev-sc/2003/02mai.asp) (on file with R.T.A.)  Mr. Roy actually developed the software to eliminate the transactions that was specific to the Restro Terminal POS and then sold the software to the 28 different restaurants.  *Id.*  He was sentenced to pay fraud penalties of $1,064,459, but did not apparently receive any jail time. *Id.*

*United States Cases* –

In what appears to be another InfoSpec case, Hu Xiaojun aka Tony Hu, was charged with failing to report 10 million dollars in cash sales and avoiding over 1 million dollars in taxes.  Plea Agreement, Paragraph 5, 6a, *United States v. Hu Xiaojun*, No. 1:16-cr-00316 (N.D. Ill. May 16, 2016)  Although the sales suppression software is not specifically mentioned, the POS system at each of Mr. Hu's many restaurants was InfoSpec Systems Inc. Model Profitek RM System V10.0.3. Application and Affidavit for a Search Warrant, Paragraph 43, *United States v. Lao You Ju,* No. 1:14-mc-00571 (Oct. 21, 2014 N.D. Ill.).

Mr. Hu was known as the unofficial "Mayor of Chinatown" and had a massive restaurant empire that did nearly $40 million in annual sales. Steve Schmadeke, *Chef Tony Hu given 1 year in prison for skirting $1 million in sales taxes*, chicagotribune.com, November 18, 2016, http://www.chicagotribune.com/news/local/breaking/ct-chinatown-chef-hid-cash-sales-met-20161118-story.html (last visited Apr 7, 2017).  Mr. Hu sold a

JOHN YIN'S SENTENCING MEMORANDUM - 17
*CR16-314RAJ*

couple of restaurants and was able to pay the restitution of over 1 million dollars.  *Id.*  U.S. District Judge Amy St. Eve sentenced Mr. Hu to a year and a day in prison and fined him another $100,000.00 and said, "The court cannot send the message" that if you're wealthy enough to pay restitution "you can walk." *Id.*

Even if Mr. Hu did not use the software, he actively trained others in how to commit the fraud, had control over a dozen restaurants and personally benefited from the tax evasion.  *Id.* His sentence was much less than the government is asking for John.

The federal criminal tax case against H. Ty Warner is also instructive.  Mr. Warner, the billionaire creator of Beanie Babies, evaded $5.6 million in US tax by hiding assets in a Swiss bank account.  *United States v. Warner*, 792 F.3d 847, 850 (7th Cir. 2015).  Because he paid full restitution, a fine of ten times the tax loss and had played Santa Claus to various causes with his millions of dollars over years, the Court sentenced him to two years' probation with community service.  *Id.*  The sentence was upheld on appeal. *Id.*  His advisory guidelines range was 46 to 57 months. *Id* at 852.

Daniel Horsky, 71, a retired University of Rochester business professor paid $100 million in fines for failing to disclose and pay taxes on his secret Swiss bank accounts. Goodman, James. *Ex-UR professor, fined $100M, sentenced to 7 months in tax case*. *Usatoday.com*., 10 Feb. 2017. (last visited April 7, 2017).  Mr. Horsky pled guilty to conspiracy to defraud the United States and submitting a false expatriation statement to the Internal Revenue Service. *Id.*  He had concealed over $220 million in offshore banks and the 15-year scheme enabled him to evade more than $18 million in income and gift tax liabilities. *Id.*  The Court ordered Mr. Horsky to serve seven months in federal prison despite facing a possible five years.  *Id.*

JOHN YIN'S SENTENCING MEMORANDUM - 18
*CR16-314RAJ*

Ms. Wong's case for tax evasion and use of the software sold to her is apparently poised for a plea upon what may be very favorable circumstances for her.  It certainly makes sense to continue Mr. Yin's sentencing date to determine what will happen in her case.

However, probationary sentences for people who have evaded taxes and been able to pay a large amount in fines and restitution are common.  For example:

> Andrew Silva, Eastern District of Virginia, Case No. 10-CR-00044, before Judge Liam O'Grady. Repatriated funds from his undisclosed offshore account by mailing himself 26 packages of currency and carrying another two packages into the United States, always structured in amounts under $10,000 to avoid detection. Sentenced to 2 years' probation, 4 months' home detention, and 100 hours of community service.

> Albert Cambata, Eastern District of Virginia, Case No. 15-CR-362, before Judge Claude M. Hilton. Received $12 million from a Belizean company, which was deposited into an undisclosed account at a Swiss bank in the name of Hong Kong Corporate entity. Funds were later transferred to a Singapore and Monoco bank account and Cambata neglected to file FBARs or Forms 8938 even after he was advised to do so by counsel. Sentenced to 1 year probation and a $15,000 fine.

> Mary Estelle Curran, Southern District of Florida, Case No. 12-80206-CR- RYSKAMP. Owned an undisclosed $47 million Swiss bank account which resulted in a $21 million FBAR penalty. Sentenced to *five (5) seconds* of probation.

> Igor Olenicoff, Central District of California, Case No. 07-CR-227. Controlled and hid assets in undisclosed foreign accounts resulting in tax  liability to the IRS totaling $52 million. His offshore accounts contained approximately *$200 million dollar*. Sentenced to two years' probation.

> Juergen Homann, District of New Jersey, Case No. 09-CR-724. Placed $5 million in an offshore account with UBS resulting in a guideline range of 30 to 37 months. Court was impressed with Homann's cooperation in providing information on individuals not previously known to the government and granted a substantial downward departure, sentencing defendant to 5 years probation and 300 hours of community service.

**LAW OFFICE OF KIRK C. DAVIS, PLLC**
1218 Third Ave. Ste. 1000
Seattle, Washington 98101
Ph.(206) 684-9339  Fax(206) 260-3685

Ashvin Desai, Northern District of California, Case No. 11-CR-846. Hid over $8.4 million in an HSBC India account. Case went to trial, sentencing guidelines called for a sentence between 78-96 months. Judge granted a 72 month variance and sentenced defendant to 6 months in prison and 6 months of home detention.

Paul Zabczuk, Southern District of Florida, Case No. 10-CR-60112. Directed his foreign clients to make payments to his company through offshore accounts he controlled in the Bahamas and Switzerland and further funded those offshore accounts through other payments. Court granted 5K1.1 motion to depart down six months. Court varied down another 18 months and sentenced defendant to 3 years' probation, 12 months' home detention, 150 hours of community service.

Steven Rubinstein, Southern District of Florida, Case No. 09-CR-60166. Hid approximately $7 million in undisclosed UBS accounts he used to purchase real estate and South African Kruggerands. Sentenced to 3 years' probation, 12 months' home detention.

John McCarthy, Central District of California, Case No. 09-CR-784. Transferred over $1 million to an undisclosed UBS account and regularly communicated with UBS representatives to authorize transactions. Court accepted 5K1.1 motion for downward departure. Sentenced to 3 years' probation, 6 months' home detention, and 300 hours of community service.

Arvind Ahuja, Eastern District of Wisconsin, Case No. 11-CR-135. Convicted in jury trial of willfully filing a false return and willfully failing to file an FBAR due to a failure to disclose more than $8.5 million held in bank accounts at HSBC India. Court varied from a guideline range of 41-51 months to a sentence of 3 years probation, 3 months home detention, a $350,000 fine, and 450 hours community service.

Sybil Nancy Upham, Southern District of New York, Case No. 14-CR-82. Unreported accounts at UBS and in a Liechtenstein foundation. Court granted a 5K1.1 motion and Court varied from a guideline range of 30-37 months to a sentence of 3 years probation and 300 hours of home detention.

Jules Robbins, Southern District of New York, Case No. 10-CR-

333. Created a sham Hong Kong Corporation to be listed as the nominal holder of his UBS accounts containing nearly $42 million. Sentenced to 12 months' probation.
Ernest Vogliano, Southern District of New York, Case No. 10-CR-00327. Opened UBS accounts in the names of Liechtenstein and Hong Kong shell corporations. Actively used funds and transferred some after learning of the criminal investigation. Sentenced to 2 years' probation.

Leonid Zaltsberg, District of New Jersey, Case No. 10-CR-437. Transferred his UBS accounts to a nominee Panamanian corporation for the purpose of hiding them from the IRS and, as found by the District Court at sentencing, "made a conscious and calculated decision to hide money offshore." Sentenced to 4 years' probation, 12 months' home detention.

Jeffrey Chatfield, charged in the United States District Court for the Southern District of California, Case No. 10-CR-4546. Held UBS account in the name of a nominee entity. Sentenced to 3 years' probation.

Thus, this facts weighs heavily in John's favor.

7.   *The Need to Provide Restitution to Any Victims of the Offense*

The victims in the case are the United States Treasury and the Washington State Department of Revenue.  John has promised to pay the restitution.  Indeed, this case is very similar to the cases mentioned above because John has been set such a heavy load of restitution by the federal government, which no other defendants are currently obligated to pay.  Indeed, until there is an assessment by the IRS, John may be responsible for the entire bill of over $3 million dollars even though he never saw any of the profits of the illegal activity.

**CONCLUSION**

JOHN YIN'S SENTENCING MEMORANDUM - 21
*CR16-314RAJ*

**LAW OFFICE OF KIRK C. DAVIS, PLLC**
1218 Third Ave. Ste. 1000
Seattle, Washington 98101
Ph.(206) 684-9339  Fax(206) 260-3685

1     Based upon the information in this memorandum and the letters of support and

2   photographs we plan to bring at the time of the sentencing, we respectfully ask the Court to

3   sentence John Yin to a term of two years of probation conditioned upon 500 hours of

4   community service.

5   Dated this 7th day of April 2017.

6

7                           Respectfully submitted.

8

                            */s/ Kirk C. Davis*
9                           KIRK C. DAVIS, WSBA#21461
                            Law Office of Kirk C. Davis, PLLC
10                          1218 Third Avenue
                            Suite 1000
11                          Seattle, WA 98101
                            T: 206.684.9339
12                          F: 206.260.3685
                            Email: kirk@kirkdavislaw.com

13

14

15

16

17

18

19

20

21

22

23
    JOHN YIN'S SENTENCING MEMORANDUM - 22
    *CR16-314RAJ*                                       **LAW OFFICE OF KIRK C. DAVIS, PLLC**
                                                        1218 Third Ave. Ste. 1000
                                                        Seattle, Washington 98101
                                                        Ph.(206) 684-9339  Fax(206) 260-3685

CERTIFICATE OF SERVICE

I certify that on April 7, 2017, I filed the foregoing with the Clerk of the Court using the

CM/ECF system, which will send notification to all counsel of record.

*/s/ Kirk C. Davis*
Kirk C. Davis

JOHN YIN'S SENTENCING MEMORANDUM - 23
*CR16-314RAJ*

**LAW OFFICE OF KIRK C. DAVIS, PLLC**
1218 Third Ave. Ste. 1000
Seattle, Washington 98101
Ph.(206) 684-9339  Fax(206) 260-3685