1              UNITED STATES DISTRICT COURT

2            WESTERN DISTRICT OF WASHINGTON
   _____
3
   UNITED STATES OF AMERICA,      )
4                                 )
              Plaintiff,          )   No. 2:16-cr-00314-RAJ
5                                 )
         vs.                      )   Seattle, WA
6                                 )
   JOHN YIN,                      )
7                                 )   Sentencing
              Defendant.          )   April 14, 2017
8  _____

9            VERBATIM REPORT OF PROCEEDINGS
         BEFORE THE HONORABLE JUDGE RICHARD A. JONES
10             UNITED STATES DISTRICT COURT
   _____
11

12 APPEARANCES:

13 FOR THE PLAINTIFF:    SUSAN M. ROE
                         U.S. Attorney's Office
14                       700 Stewart Street, Suite 5220
                         Seattle, WA 98101
15                       susan.roe@usdoj.gov

16 FOR THE DEFENDANT:    KIRK C. DAVIS
                         Law Office of Kirk C. Davis, PLLC
17                       1218 Third Avenue, Suite 1000
                         Seattle, WA 98101
18                       kirk@kirkdavislaw.com

19

20 Andrea Ramirez, CRR, RPR
   Official Court Reporter
21 United States District Court
   Western District of Washington
22 700 Stewart Street, Suite 17205
   Seattle, WA 98101
23 andrea_ramirez@wawd.uscourts.gov

24 Reported by stenotype, transcribed by computer

25

USA v. Yin, 4/14/17

| | |
|---|---|
| 1 | THE CLERK:  We are here for sentencing in the matter |
| 2 | of the United States vs. John Yin, Cause Number CR16-314, |
| 3 | assigned to this Court. |
| 4 | If counsel and the probation officer could please rise and |
| 5 | make your appearances for the record. |
| 6 | MS. ROE:  Good morning, Your Honor.  Susan Roe, on |
| 7 | behalf of the United States.  Also present at counsel table is |
| 8 | IRS Special Agent Mark Pahnke. |
| 9 | THE COURT:  Good morning, both of you. |
| 10 | MR. DAVIS:  Good morning, Your Honor.  Kirk Davis, |
| 11 | representing Mr. John Yin, who's present to my right. |
| 12 | THE COURT:  Good morning, both of you.  Please be |
| 13 | seated. |
| 14 | MS. OLSEN:  Good morning, Your Honor.  Brieanne |
| 15 | Olsen, on behalf of the U.S. Probation Office. |
| 16 | THE COURT:  Good morning. |
| 17 | We'll begin this proceeding with the Court identifying all |
| 18 | the documents that I've received and reviewed.  Those documents |
| 19 | include the pre-sentence report prepared by Probation Officer |
| 20 | Andrea Porter, and the attachments, including the victim impact |
| 21 | statement from the Washington Trust Bank.  The Court's also |
| 22 | reviewed the Government's sentencing memorandum, the |
| 23 | Defendant's sentencing memorandum, and a document that was |
| 24 | filed just this morning which is titled "Exhibits for |
| 25 | Sentencing." |

USA v. Yin, 4/14/17

| | |
|---|---|
| 1 | Counsel are directed in the future not to file documents |
| 2 | on the same day, to give to the Court just a minute before the |
| 3 | Court comes out for a proceeding. |
| 4 | The Court's also reviewed the Pretrial Services release |
| 5 | status report and the plea agreement. |
| 6 | Counsel for the government, are you aware of any |
| 7 | additional documents that I did not state for the record? |
| 8 | MS. ROE:  Your Honor, I apologize, but I don't |
| 9 | believe the Court said it had considered the Government's |
| 10 | responsive pleading to sentencing, Document 20, which was filed |
| 11 | on 4/12. |
| 12 | THE COURT:  That's included. |
| 13 | MS. ROE:  Okay.  Thank you. |
| 14 | THE COURT:  Yes, that was included. |
| 15 | And Counsel for the government, I see that you had a |
| 16 | tentative objection to the two-level adjustment in the |
| 17 | pre-sentence report, but that was addressed, and it's included |
| 18 | in the pre-sentence report. |
| 19 | MS. ROE:  Yes. |
| 20 | THE COURT:  Are there any other objections that you |
| 21 | have to the pre-sentence report? |
| 22 | MS. ROE:  None. |
| 23 | THE COURT:  All right.  Thank you. |
| 24 | Counsel for the Defendant, are there any additional |
| 25 | documents that I did not state for the record? |

USA v. Yin, 4/14/17

1          MR. DAVIS:  No, Your Honor.

2          THE COURT:  And I take it that you've had a chance to

3   review the pre-sentence report with your client?

4          MR. DAVIS:  Yes, Your Honor.

5          THE COURT:  And the only objection I saw from the

6   pre-sentence report is the sophisticated means adjustment that

7   you're challenging.

8       Is that correct, Counsel?

9          MR. DAVIS:  Your Honor, we were also requesting that

10  a minor role adjustment be added as well.

11         THE COURT:  All right.  Do you wish to make any

12  additional argument on either one of those objections, Counsel?

13         MR. DAVIS:  We don't have anything additional to

14  state at this time, Your Honor.  We rely upon our briefs.

15         THE COURT:  All right.  Thank you.

16      The Court will overrule both objections.  I'm satisfied

17  that the reasons given by probation, in response to the

18  government's challenge for not including the two-level

19  adjustment, was appropriate.  They've adequately described the

20  fact that this was a sophisticated enterprise, an operation

21  that went for an extended period of time, that involved complex

22  mechanisms and operations by your client.

23      The Court also does not find that he was a minor

24  participant in this matter, or at least to get a minor-role

25  adjustment.  The Court is satisfied that, based upon his

USA v. Yin, 4/14/17

| | |
|---|---|
| 1 | conduct, even if he was the only one that was arrested or |
| 2 | charged, that doesn't necessarily dictate the outcome of how |
| 3 | the Court sees his role; so both objections are overruled. |
| 4 | MR. DAVIS:  I forgot, Your Honor, there is one more, |
| 5 | with respect to the criminal history. |
| 6 | THE COURT:  All right.  The -- Counsel, I think the |
| 7 | criminal history is 2? |
| 8 | MR. DAVIS:  Well, that's the problem, Your Honor.  We |
| 9 | don't believe that's correct.  The allegation was that Mr. Yin |
| 10 | committed the offense while he was under supervision, but |
| 11 | there's no evidence of that. |
| 12 | THE COURT:  Let me hear from the government. |
| 13 | MS. ROE:  Yes, Your Honor. |
| 14 | This is in regards to Paragraphs 35 and 36 of the |
| 15 | pre-sentence report. |
| 16 | THE COURT:  Right. |
| 17 | MS. ROE:  His supervised release or probation from |
| 18 | the state ended in September of 2009.  The commentary, |
| 19 | Allegation Note 4, indicates that if any relevant conduct is |
| 20 | committed while under the probation, it should be added.  I |
| 21 | note that in the Information, Count 2, on the Conspiracy to |
| 22 | Defraud the government, Paragraph 22 of the Information, it |
| 23 | says, "Beginning at a time unknown, but no later than 2009, and |
| 24 | continuing." |
| 25 | Also, in the plea agreement, in the statement of facts, at |

USA v. Yin, 4/14/17

1    the top of Page 5, the line that he agreed to is, "Beginning at

2    a time unknown, but by 2009, and continuing until mid-2015."

3    And, of course, we know that the zapper prosecution in Canada

4    dealt with conduct between 2000 and 2008.  So I think all of

5    those are facts the Court may consider to find that he

6    committed relevant conduct while he was and prior to the

7    expiration of his probation in September of 2009.

8            THE COURT:  Thank you.

9        Counsel?

10           MR. DAVIS:  But the problem is, Your Honor, that

11   there's no -- first of all, it's incorrect that the case ended

12   in September.  It actually ended in August of 2009, the Theft

13   in the Third Degree that he was -- that was open in King County

14   District Court.  He was sentenced in August of 2007, and it was

15   a two-year suspended sentence.  So the actual jurisdiction

16   ended in August of 2009, and then the case -- the Court

17   officially entered a note in the docket that the case has been

18   closed.  But the Court lost jurisdiction in August.

19       And then there's no indication as to when in August

20   Ms. Wong, who purchased this cash zapper software, did that in

21   2009.  So the burden is on the government, under *U.S. vs.*

22   *Villasenor*, to show the factual basis upon which they're

23   ratcheting up the sentencing.  And they haven't done that,

24   because they haven't shown when exactly in 2009 this occurred.

25   It certainly could have occurred after August of 2009.  So

USA v. Yin, 4/14/17

1    there's no evidence that the government has come forward with

2    as to when that software was purchased.

3            THE COURT:  Thank you, Counsel.

4        Counsel, the Court looks at the -- one, the totality of

5    all the circumstances before this Court, and the Court also

6    looks at what your client admitted to.  And your client

7    specifically admitted in the plea agreement to a period of time

8    that was in 2009.  Now, while that doesn't have the precision

9    that we would like or desire, the Government's burden is not

10   beyond a reasonable doubt, merely preponderance of the

11   evidence.  And based upon the circumstances before this Court,

12   I'm satisfied that that meets at least that standard.  So the

13   objection is noted, but it's overruled.

14       So with that, the Court has addressed all of the

15   outstanding objections to the pre-sentence report.  The Court

16   will then look at the guidelines for purposes of calculations

17   for the defendant.  I've used the 2016 guidelines edition for

18   two offenses, Count 1, Wire Fraud, and Count 2, Conspiracy to

19   Defraud the government.

20       Now, Counts 1 and 2 will be grouped.  That's done in

21   accordance with Guideline Section 3D1.2.  In addition, in

22   accordance with Guideline Section 3D1.3(a), the count with the

23   highest offense level will be used for scoring.  In this case,

24   that will be Count 1, which is wire fraud, and the Court will

25   use that as the applicable guideline for these calculations.

USA v. Yin, 4/14/17

1   With that, the base offense level is 7.  And that's pursuant to

2   Guideline Section 2B1.1.

3       Next, the Court looks at specific offense characteristics.

4   Under Guideline Section 2B1.1(b)(1)(I), 16 levels are to be

5   added if the loss attributed to the defendant is more than

6   $1.5 million, but less than $3.5 million.  In this case, the

7   defendant is responsible for loss in the amount of

8   $3,445,580.50.  Therefore, the 16-level adjustment upwards is

9   appropriate.

10      Next, the Court looks at an additional specific offense

11  characteristic, and that is, if, under Guideline

12  Section 2B1.1(b)(10)(C), it's determined that the defendant

13  used sophisticated means and intentionally engaged and caused

14  the conduct constituting sophisticated means by complicated

15  electronic trail the defendant took to conceal the fraud.  I'm

16  satisfied that, based upon the reports that have been provided

17  to this Court, specifically in the pre-sentence report and the

18  summary provided in the briefing contained, the matter clearly

19  qualifies for the two-level upward adjustment and meets this

20  guideline characteristic.

21      There are no other adjustments for victim role in the

22  offense or obstruction of justice.  This gives us the adjusted

23  offense level subtotal of 25.  There's no Chapter 4

24  enhancements.

25      I've had an opportunity to review the defendant's letter

USA v. Yin, 4/14/17

1  provided to this Court, and I've also taken into consideration

2  the timeliness of the defendant's plea, which has given the

3  government the opportunity to more efficiently utilize its

4  resources.  For these reasons, he qualifies for the three-level

5  downward adjustment for acceptance of responsibility.  This

6  gives us an offense level of 22.  He has a criminal history

7  category of 2, an imprisonment range of 46 to 57 months;

8  supervised release range, one to three years.  Probation, he's

9  not eligible.  And the fine range is $7,500 to $75,000.

10         Counsel for the government, how do you wish to respond to

11  the Court's calculations?

12              MS. ROE:  We're in agreement with them, Your Honor.

13              THE COURT:  Thank you.

14         Counsel for the defense, subject to your objections, how

15  do you wish to respond to the Court's calculations?

16              MR. DAVIS:  We don't have any response, other than

17  our previously noted objections.  We disagree with the

18  calculations.

19              THE COURT:  Then we'll proceed in the following

20  order.  I'll hear first from counsel for the government, I'll

21  see if probation has any additional input, I'll then hear from

22  defense counsel, and the defendant will be the last person to

23  address the Court.

24         Counsel for the government, your recommendation?

25         And, Counsel, one of the things I'd like to hear from the

USA v. Yin, 4/14/17

1    government, which isn't necessarily addressed in your briefing

2    to the Court, is, Counsel had provided a plethora of similar

3    circumstances, or other individuals, who received straight

4    probation sentences and/or varied sentences that don't fit

5    within the range of punishment that the government is seeking

6    to ask.  So I'd like you to address what you can do by way of

7    avoiding sentencing disparity in your recommendation, as well

8    as the additional factors that you may wish to present to the

9    Court.

10           MS. ROE:  And, Your Honor, when you said counsel

11   presented, are you meaning government or defense?

12           THE COURT:  No, defense.

13           MS. ROE:  Thank you, Your Honor.  Let me address that

14   initially, since the Court asked about that.

15       The defense has submitted several pages of tax evaders who

16   have received really significantly lower sentences than the

17   Government's asking for at this time.  The first difference

18   that we think is important, and instructive, is that this

19   person, Mr. Yin, was not involved in one tax evasion, or one

20   person's tax evasion, but was really a linchpin for hundreds of

21   tax evasions.  And he really should be viewed as in a position

22   similar to a tax preparer who promulgates hundreds of wrong and

23   underpaying tax returns.

24       The tax evaders listed in the defendant's memo were, of

25   course, cherry-picked from a variety of district courts around

USA v. Yin, 4/14/17

```
 1    the country, and do not appear to be representative, but rather
 2    to be outlier cases.  There were some really unusual ones.  And
 3    although we don't know all of the facts of all of those cases,
 4    some have come to mind, for instance, the Beanie Baby man, who
 5    cheated on taxes to the tune of millions.  My understanding is
 6    he also paid $700 million in restitution.  So there are factors
 7    which affected, individually, those sentences, that rendered
 8    perhaps something that isn't before this Court, but rendered
 9    those defendants particularly either acting responsibly, or
10    showing great concern for their behavior, and making more than
11    just restitution, but great amends to things, so that those are
12    not what this defendant is.
13        This defendant has issued -- has entered his guilty plea
14    without us having to negotiate and go to trial.  He deserves
15    his three points for acceptance of responsibility.  But it's
16    interesting that today, instead of acknowledging his really
17    linchpin role in this, he still comes to this Court as in the
18    guise of a victim, that is, he didn't make the money that the
19    restaurants did; he didn't reap the benefits that some of the
20    restaurant owners did; and that he's an older man, which he is;
21    and that he's sick, and that he really shouldn't have any jail
22    sentence.  He comes to the Court not in a position, or a
23    posture, of asking for forgiveness, or saying what he can do to
24    make this up, but rather as someone who's saying he's been
25    punished enough, and he was a victim in this.
```

USA v. Yin, 4/14/17

1    Mr. Yin is in his middle sixties.  He has lived a

2   decent-enough life in the last ten years while he sold this.

3   He has not had a terrible life.  He married a woman -- I don't

4   believe she's in court today -- about 40 years younger.  She

5   had been a student at the University of Washington.  They met

6   and married.  That's a very positive thing in his life in these

7   last few years.  She has gained citizenship through him.  We

8   believe that that's probably a legitimate marriage, and don't

9   look beyond that.  But it shows that his life has been good.

10    He is not taking responsibility, in the sentencing, for

11   the amount of damage and the amount of cheating that's been

12   done as a result of Mr. Yin's actions.  His actions are far

13   greater, in range and in scope, than any single one of his

14   restaurants.

15    Facing East, which is the restaurant that's been named,

16   it, alone, in three years, skimmed enough cash, about

17   three-and-a-half million dollars, so that it owes over $900,000

18   to state and federal authorities.  The eight other restaurants

19   included in his plea agreement skimmed an estimated

20   seven-and-a-half, nearly $8 million, in cash in those few

21   years.  It's only through the defendant that the hundred

22   restaurants or so that we know he sold this to could create a

23   hundred sets of false books.  And Mr. Yin bears responsibility

24   for that.  It was through his work that they had the ability to

25   do that.

USA v. Yin, 4/14/17

1        It is also Mr. Yin who created an unfair business field

2    for other Chinese restaurants in this area.  Those who bought

3    his zapper could lower their prices, keep employees off the

4    payroll, reduce their taxes, pocket cash, and run a very

5    profitable business.  But the honest restaurants had some

6    trouble succeeding.  They paid Social Security and Labor and

7    Industries on their employees.  They reported and paid their

8    sales tax.  They reported and paid their income tax.  They

9    could not compete easily with the people, the customers, of

10   Mr. Yin's; so they unleveled the playing field for these

11   restaurants.

12       The defense has given an explanation that cheating on

13   taxes is part of Chinese culture.  And we don't want to comment

14   either on the appropriateness of that claim, or its veracity.

15   But, Your Honor, I would note that Mr. Yin first lived in the

16   United States in 1976.  He's been immersed in U.S. culture for

17   over 40 years.  He knows that cheating on taxes is illegal, and

18   he facilitated it, on the down-low, not always wanting to talk

19   about it openly, but he facilitated it.

20       If I may address restitution for a few minutes, because it

21   seems to be quite an issue for the defense.  The restitution

22   requested here is the federal income tax, the

23   three-and-a-half-million dollars.  It, on its face, appears to

24   be quite a burden to Mr. Yin.  The government has made it an

25   imperfect joint and several, as we noted in our sentencing

1    memo.  And it's not such the burden as may be portrayed.

2         Mr. Yin will receive credit for the restaurants when

3    they -- for the amounts that the restaurants pay when they pay

4    their taxes.  Those restaurants may also be paying assessed

5    penalties and interest.  So what they pay may be more than what

6    we assessed as the restitution due.  We can see that even in

7    the Attachment 2 that was to the opposition to continued

8    sentencing.  In that one, Restaurant Number 2 was assessed,

9    under the state, $132,000 for unpaid state sales taxes, but it

10   has paid over $500,000, voluntarily.  That's because it then

11   paid taxes for other restaurants it owns.  So the Court may, I

12   think, assume that these restaurants will, once they know of

13   their audits, will be fined civilly or administratively, and a

14   few will be charged in the state criminally, will be paying

15   this restitution nearly in full.

16        It would be inappropriate to make Mr. Yin pay restitution

17   that isn't owing.  That is, once the restitution is paid by

18   whoever pays into it, it's satisfied.  But I bring this to the

19   Court's attention because the three-and-a-half-million dollars

20   is not going to be borne solely by Mr. Yin.

21        Also on the restitution, there are several hundred

22   thousand, about $700,000, that's already been paid.  I spoke

23   with the assistant attorney general in charge of the -- Facing

24   East, Ms. Wong's case, Scott Marlow, who indicated that

25   Ms. Wong will be paying the $300,000 owed to the state before

USA v. Yin, 4/14/17

1   the entry of her plea.

2          THE COURT:  Let me ask you a question, Counsel.

3      On Page 3 of the pre-sentence report, specifically

4   Paragraph 2, it indicates, "Lastly, the defendant agrees to pay

5   restitution in the amount of 3 million-plus."

6      So is there agreement or not agreement?

7          MS. ROE:  There is an agreement.  But, Your Honor, by

8   the terms of the plea agreement, we said that he should receive

9   credit for amounts paid by other people.  So it's an imperfect

10  joint and several.  Those people aren't being charged

11  federally, at least at this point, but he should receive credit

12  for that.  It's really just missing tax.  I mean, it's a

13  federal tax, calculated, and the feds shouldn't get it twice.

14          THE COURT:  Okay.

15          MS. ROE:  The one last part, Your Honor, regarding

16  Facing East, was that that has been delayed because there was

17  no monitoring system in place, which is required by state law.

18  Mr. Marlow said that the monitoring system has now been

19  developed.  And it was with the help of Ms. Wong and her

20  attorney.  He estimates that Ms. Wong paid her attorney tens of

21  thousands of dollars to assist in gathering and implementing

22  this monitoring system.  Once that is in place, and that Wong

23  plea goes through, he anticipates that other restaurants who

24  are clients of Mr. Yin's will be charged and sentenced in the

25  state.  But Ms. Wong is also, I think, receiving great credit

USA v. Yin, 4/14/17

1    in the -- or will receive credit at her sentencing for the

2    efforts she and her attorney have gone to to establish and

3    produce a monitoring system useful to the state.

4         Unless the Court has other questions?

5              THE COURT:  I have no additional questions, Counsel.

6              MS. ROE:  Thank you.

7              THE COURT:  Just to be clear, there's no need, in

8    your mind, for a restitution hearing, beyond what's

9    contained -- or what's left in the plea agreement, since there

10   appears that there's an agreement in concept and principle

11   about the total amount due, and the fact of obligation;

12   correct?

13             MS. ROE:  That's correct.  And, Your Honor, we have

14   agreed to assist counsel in tracking those restitution

15   agreements -- I mean, those restitution payments.  Special

16   Agent Pahnke, of course, can have access to the IRS

17   information, and can reveal those when those payments are made

18   in the next few years.

19             THE COURT:  All right.  Thank you.

20        I'll hear from probation.

21             MS. OLSEN:  Thank you, Your Honor.

22        As Your Honor is aware, I did not interview this defendant

23   in this case, however staffed any issues with Ms. Porter.  And

24   she just wanted to reiterate to the Court that she stands by

25   her recommendation of the low end of the guideline sentence,

USA v. Yin, 4/14/17

```
 1   and contends that all the aggravating factors outlined in the

 2   offense characteristics, as noted by the government, outweigh

 3   the mitigating factors in the defendant's personal history, and

 4   stand by her recommendation.

 5             THE COURT:  Thank you.

 6        Counsel?

 7             MR. DAVIS:  Thank you, Your Honor.

 8        Your Honor, we're just here to ask for a fair sentence for

 9   Mr. Yin.  The Government's request for a 46-month guideline

10   sentence is disproportionate, both to the other cases and to

11   Mr. Yin's conduct in this case.

12        The process has been stacked against Mr. Yin from the

13   beginning.  Mr. Yin is the only one facing federal charges.

14   Counsel for the government has indicated that she's spoken to

15   Mr. Marlow, who is the government prosecutor handling the state

16   case of Ms. Wong, the Facing East Restaurant.  And I've spoken

17   to him, as well, and got indication of what that plea is going

18   to be.  And with the Court's permission, I can indicate what

19   that is.

20        It's my understanding that Ms. Wong may not be facing any

21   jail time at all.  She will be pleading to potentially two

22   felonies.  And her standard range is something like two to six

23   months.  When I spoke to Mr. Marlow, he actually thought it was

24   lower, that it was zero to 90.  And when I inquired whether

25   there was going to be any jail time, he said that had not been
```

USA v. Yin, 4/14/17

1    worked out yet.

2         So Mr. Yin is facing --

3              THE COURT:  Well, Counsel, before you move from

4    Ms. Wong, in terms of doing comparisons between your client and

5    Ms. Wong, you're giving me the anticipated range, and what

6    she's going to plead to.  Do you have any information on any

7    criminal history?

8              MR. DAVIS:  No, I don't believe -- I don't know.  I

9    don't know if she has any or not, Your Honor.

10             THE COURT:  Do you know if she's qualifying for

11   first-time offender?

12             MR. DAVIS:  That's my understanding.  That's my

13   understanding why Mr. Marlow is -- was believing that it was

14   potentially no jail range for Ms. Wong.

15             THE COURT:  So would you accept that there is great

16   differences in the state system, with a

17   first-time-offender-type prosecution, as opposed to being

18   charged in federal court with two separate felonies?

19             MR. DAVIS:  Yes, Your Honor.

20             THE COURT:  Okay.  Please continue, then.

21             MR. DAVIS:  Even if Ms. Wong was not subject to a

22   first-time-offender waiver, her standard range would still be

23   very low.  Because the government, in state court, is choosing

24   to dismiss -- or let her company plead to something like the 21

25   false tax return counts.  So personally, she's going -- she may

USA v. Yin, 4/14/17

```
 1    not be doing any jail time at all.  And that's what I suspect,

 2    based upon my conversation with Mr. Marlow, and listening to

 3    the government here today.

 4        So juxtapose -- you know, the Facing East Restaurant is a

 5    successful restaurant.  They've got some pictures on their

 6    website indicating that they've expanded.  The government

 7    previously indicated that -- and it's contained in the plea

 8    agreement that Ms. Wong essentially evaded over $900,000 in

 9    tax, from state and federal government tax.

10        Mr. Yin has attempted to cooperate.  And I did speak to

11    Ms. Bianca Tse, after receiving the government's memo about the

12    difficulties in Mr. Yin cooperating.  And she indicated that

13    they had a difference as to how their undercover investigation

14    to implicate the Chans, in Canada, was going to take place.

15    They were pushing for -- that is, Mr. Yin and Ms. Tse, were

16    pushing for an investigation in Canada and using a

17    Chinese-background agent.  And the government resisted that,

18    said that was too complicated, that they couldn't do that.

19    Mr. Yin was -- did not always, apparently, have the best memory

20    as to all the individual restaurants, but he did his best to be

21    forthcoming with the government.  Obviously, there's different

22    viewpoints as to what happened there.

23        But he did make effort to cooperate.  He's attempted to do

24    that on his own, with his wife, in providing additional

25    information to the government.  You know, he's not a
```

USA v. Yin, 4/14/17

```
 1   sophisticated individual that knows how to even cooperate with
 2   the government.  Certainly, if I'd been helping Mr. Yin at that
 3   time, I like to think that I would have been able to say to the
 4   government, you know, "Whatever you want, Mr. Yin will do.  If
 5   you want him to be here in the United States and call them over
 6   the border, we'll do that.  If you want him to wear a clown
 7   suit, with a red nose and whatever, whatever you want, that's
 8   what we'll have him do."  But unfortunately, that process was
 9   missed for Mr. Yin, so he got no credit.  There's no 5K here.
10   There's nothing showing that he gave any kind of information,
11   or that he gave any kind of -- got any kind of credit to the
12   government -- from his cooperation with the government.
13       You know, the government points out, in their sentencing
14   memo, that Mr. Yin was knowledgeable of computers.  And he was,
15   to a degree.  He can download software.  He can hook up
16   printers and things like that.  But he -- he's not a person
17   that's writing software.  He's not a person that -- in fact, as
18   we indicated in our memo, one of the government agents from the
19   state said that he appeared very unsophisticated and had a hard
20   time -- Mr. Yin had a hard time even using a mouse.
21       He doesn't know about taxes.  At one point, Mr. Yin asked
22   the undercover IRS agent about what he should do about paying
23   taxes in California.  He's not like a tax preparer.  He didn't
24   have control over the enterprise.  He didn't have specific
25   knowledge of tax codes, what's going on.  What he did know is
```

USA v. Yin, 4/14/17

1   that when he provided the tool, this extra tool, to these

2   restaurants, that they were likely to evade taxes.  He knew

3   that.  He's guilty of that.  And, boy, is he sorry for it.  He

4   understands he's going to be paying for the rest of his life

5   for these terrible mistakes that he made.  Obviously, he told

6   himself that, you know, restaurants are doing it anyway.  And

7   it is not just Chinese restaurants.  It's really endemic to

8   lots of different restaurants that are keeping two sets of

9   books.  Mr. Yin would tell you it's a very, very high

10  percentage in the Asian community, in the Chinese community,

11  restaurants that are keeping two sets of books, one to show the

12  government, and one for themselves.

13      So he was -- he told himself that just by providing this

14  thing, which they were essentially doing anyway, that it really

15  wasn't that bad, that it really wasn't that much.  And he tried

16  to distance himself from it further, after the prosecutions in

17  Canada, and go up there and say, you know, "I'm not really

18  interested in doing this anymore."  And they said, "Well, you

19  know, you need to keep doing this.  But, you know, if it makes

20  you feel any better, you can just do it by e-mail."  And, you

21  know, very silly, it was very silly he thought that that

22  somehow distanced him from the illegal conduct.  Clearly, it

23  didn't.  Clearly, it didn't.  And he's sorry for that.

24      So our main -- obviously, our main point here, Your Honor,

25  is that a lot of these taxpayers that have a lot of money can

USA v. Yin, 4/14/17

1   buy their way out of trouble.  As Ms. Roe just said, with the

2   Ty Warner case, the owner of Beanie Babies, you know, he's a

3   billionaire.  And yet, he thought it would be a good idea if he

4   could be a sharpshooter, and save a little money, put some

5   money in a bank account offshore, and not pay taxes.  And he

6   was able to pay millions of dollars to avoid prison time.

7   Ms. Wong, it was just mentioned by the government, she -- her

8   cooperation is weighed by how much money she's able to pay.

9       Well, we wish Mr. Yin was rich.  We wish that he could buy

10   his way out of trouble.  But he can't.  He can't.  All he can

11   do is what he's done so far, which is admit his wrongdoing,

12   agree to pay as much of the restitution as possible, which he

13   tried to pay before even today, but he was told he couldn't.

14           THE COURT:  Counsel, let me ask you this.  Do you see

15   any similarities or dissimilarities between what your client

16   did and what Ms. Wong did?  In other words, you're asking the

17   Court to compare, and with the obvious point being sentencing

18   disparity.

19       What things did Ms. Wong do, that you can represent to the

20   Court, that were materially different from what this defendant

21   did?

22           MR. DAVIS:  I think ultimately it's roughly similar.

23   Because the government -- I mean, Ms. Wong is actively,

24   knowingly taking money from the government every day.  That's

25   what she was doing.  She was able to calibrate the software to

USA v. Yin, 4/14/17

1    set it at, I believe it was, seven percent cash totals.  And so

2    she was doing that every day, knowingly, and knowingly taking

3    money.

4        Mr. Yin doesn't know what she's doing, presumes that she

5    probably has got this scheme to avoid state tax, potentially

6    even federal tax, although that's another step removed.  He's

7    aware of that.  But her -- I would submit, actually, that her

8    conduct is worse than Mr. Yin's conduct.  He's like the

9    supplier of the tool, and she's the actual robber, if you will.

10   So which is worse?  Is it the person that's actually going in

11   and taking the money, or is it the person that gave them the

12   tools to do that?

13       I do know that it's unfair that -- if you believe they're

14   roughly equal, it's unfair that she gets a no-jail or very

15   minimal jail sentence, and Mr. Yin is looking at three to four

16   years in prison.

17            THE COURT:  And, Counsel, would you compare for the

18   Court, in terms of your analysis, how long your client was

19   involved in this criminal activity compared to how long

20   Ms. Wong was involved in this criminal activity?

21            MR. DAVIS:  It's my understanding they were exactly

22   parallel.  Because Ms. Wong was his first customer.  That's my

23   understanding.

24            THE COURT:  And how many other individuals were

25   affected by Ms. Wong's activity compared to the individuals

USA v. Yin, 4/14/17

1  affected by Mr. Yin's activity?

2       MR. DAVIS:  Well, certainly Mr. Yin's activity, he

3  was involved with more people who were cheating the government.

4  But Ms. Yin had a more -- or excuse me -- Ms. Wong had a more

5  direct effect on people, the state, by taking their money.  You

6  know, I mean, it's almost -- it's getting close to a million

7  dollars.  So it's -- our position is it's just unfair, Your

8  Honor, that Ms. Wong is looking at a potential no-jail

9  sentence, and Mr. Yin here is looking at many years in prison.

10  He did wrong.  There's no question about it.

11      We submit there's a better way to have people learn about

12  this.  As we indicated, this is a real problem in the

13  restaurant community.  We've reached out to a number of Asian

14  restaurant associations and chambers of commerce.  And we

15  believe Mr. Yin would be a very valuable person to go and speak

16  at these events, and educate people.  Part of his community

17  service should be, "You need to go around to all of these

18  restaurants and visit every single restaurant and tell them

19  what's going on."  In fact, people are still asking Mr. Yin for

20  this illegal software.  Of course, he's turning them down.

21      But there are a lot of people still out there, and I think

22  we could do a lot in terms of education if Mr. Yin was to do

23  that, more so than just -- obviously, the government is looking

24  at this as a -- I believe, in terms of a general deterrence,

25  you know, this lightning bolt that came down from the bench and

USA v. Yin, 4/14/17

1    the government, and that spot over there, where Mr. Yin used to

2    be standing.  You better not be in that spot, Restaurant A, B,

3    or C, because that's what's going to happen to you.

4         But at the same time, if that's the message, why is

5    Ms. Wong going to be looking at a potential no-jail sentence?

6    How much sense does it make for the government to go after

7    restaurants criminally when they can do the same thing civilly?

8    They can just assess them, and then they're going to make these

9    payments, with the specter of criminal charges, perhaps, but we

10   don't know for sure that anyone else is going to be charged out

11   of this.

12        Your Honor, we're just asking you to make this fair, and

13   would ask that you follow our recommendation.

14             THE COURT:  All right.  Thank you, Counsel.

15             MR. DAVIS:  Thank you very much, Your Honor.

16             THE COURT:  Mr. Yin, your lawyer has spoken for you.

17   He's also provided various documents for the Court to review.

18   I've reviewed all those documents, including the one that was

19   submitted this morning, as well as the pictures and the

20   letters.

21        Sir, you're not required to say anything, if you choose

22   not to speak to the Court.  But if there's something that you'd

23   like to say, please step to the lectern, and share your

24   thoughts from that location.

25             THE DEFENDANT:  Thank you, Your Honor, for giving me

USA v. Yin, 4/14/17

1    the opportunity to express myself.

2         My name is John Yin.  I was born 1950, 1st of August.  I

3    come to the United States was 1976.  Since almost 40 years in

4    United States, I work so hard because of my English -- because

5    of my language, I couldn't get very good job.  So I spent most

6    of my life working in restaurant as dishwasher, busboy, waiter,

7    and long hour, hard work, very low pay, and no benefit, no

8    insurance.  That's hard.  That was my life over the last almost

9    30 years.

10        In -- when I turned 50 years old, I feel like I couldn't

11   do any more for waiter's job, so I go back college, try to

12   learn some skill to help me to get better job, make more money

13   to support my family.  So I went to the technical colleges in

14   Washington, in Kirkland.  I learned how to -- learned computer

15   program.

16        But after I graduated college, and I looking for job, so I

17   went to -- I got a job from the Profitek, Vancouver.  That's my

18   first job -- I could say that's my first real job for my

19   lifetime.  And I get so excited.  But the reality, when I go to

20   market, most the restaurant, I try to sell my POS system to the

21   restaurant, and the restaurant, they want to have some kind of

22   software to modify the cash.  At that time, I have no idea

23   what's the consequence about that software.  But because I try

24   to make a sale, so I have no choice to sell this software to

25   the restaurant.  After that, I realize that software is not

USA v. Yin, 4/14/17

1    good.  It is not the way to do business, and -- but I just got

2    involved.  I couldn't stop right there, because I needed to

3    continue to sell the software to maintain my expense.

4         Then, in 2012, I heard the Profitek company in Vancouver

5    had the software issue problem, and I feel like it's good time

6    for me to stop, so I went to Vancouver.  My company told them I

7    don't want to deal with those kind of software anymore, because

8    it's not good.  Even before that, all the customers, they ask

9    for software.  I always tell them, "Don't use that software,

10   because it's not good for you."  I always try to stop the

11   customer to use it, but sometimes the customer just beg me.

12   They say they have to use it, because they have their own

13   reason.  I don't know what is the reason for that to use, but I

14   just want -- I'm selling it because I can continue to get.

15        After 2012, I stopped doing that more, and the company

16   told me -- I just tell the customer, "If you want it, I don't

17   want to provide you anymore."  So they say, "If you don't

18   provide me this software, I can go with the other company, and

19   I can get software from other company."  I say, "I cannot stop

20   you doing that, but I'm not going to do that for you anymore."

21        So, Your Honor, I'm really sorry for the whole incident,

22   because I know that was not a right way to do business, and I

23   wish I can tell all my customers, "Don't use it, the software."

24   I try my best to tell my customer.  Most customer, they

25   appreciate it.  They say, "Okay.  I'm not going to use it."

USA v. Yin, 4/14/17

1   But some customers still stubborn.  They say, "If I cannot buy

2   it from you, it's okay.  I can buy it from other place.  I'm

3   going to use it."  I just tell them, "I cannot stop you, but I

4   wish you don't buy it."

5       I'm so sorry for this incident.  I know the cost to the

6   government of the lose the money, and I wish I never done it

7   before, but since already happened.  So I cannot bring the time

8   back, but I'm just deeply sorry myself and for the government.

9   I wish I would take responsibility for my fault, and I wish I

10  have an opportunity to educate all the restaurant owners from

11  teaching, "Don't use the software," do something good for the

12  good, decent people.

13      And I don't have anything else to say.  I made a mistake.

14  I take consequence.  I take penalty.  I just wish this could be

15  last thing for my life.  I still have rest of life.  I still

16  want to do something good for the country.

17      Thank you, Your Honor.

18          THE COURT:  Thank you, Mr. Yin.  You may be seated.

19      If there's nothing further to come before this Court, this

20  Court is mandated to calculate the appropriate guideline range,

21  and I've done that.  The Court is also expected to look at any

22  traditional variances or departures that might be applicable

23  due to the facts and circumstances, and I've done that as well.

24      The Court is also charged with the responsibility of

25  looking at, and considering, all of the Section 3553(a) factors

USA v. Yin, 4/14/17

1    of the sentencing guidelines.  It is my practice to go through

2    those factors that serve as the basis for the sentence that I

3    will impose.  So, Mr. Yin, you'll have a clear understanding of

4    how the Court arrived at the sentence that will be given to you

5    this afternoon.

6         Now, first, I look at your history and characteristics.

7    And I would note at the outset that, although you have a

8    criminal history category of two, most of that criminal history

9    category is dated.

10        The Court then looks at the fact that you were raised in

11   what's been characterized as a lower-middle-class family, with

12   some financial challenges.  So the Court looks at those two

13   factors as being mitigating factors in your history and your

14   background.

15        The Court also looks at the fact of what indicates to me

16   that you have had a long, hard life, in terms of how long

17   you've worked.  You've shared the same with the Court this

18   morning of the types of jobs that you've had and things that

19   you tried to do to improve your lifestyle.

20        So when I look at your history and characteristics, you do

21   appear to be -- have had a pro-social life, hard work, and

22   trying to do things which are productive and positive in

23   society.

24        When the Court looks at the nature and circumstances of

25   the current offense, however, the Court sees that as one of

USA v. Yin, 4/14/17

| | |
|---|---|
| 1 | aggravating circumstances.  Because under those circumstances, |
| 2 | you served as a facilitator of illegal operations, and you |
| 3 | assisted other individuals, whether they were begging you, |
| 4 | promising you.  You haven't represented that you were |
| 5 | threatened; but nonetheless, you were a facilitator.  And when |
| 6 | I look at the different categories of individuals, there's |
| 7 | eight or nine other companies out there with enormous tax bills |
| 8 | that weren't paid, and it's all because of what you provided. |
| 9 | And at some point in time, the light had to come on and let you |
| 10 | know this was illegal, this was criminal, and you had to know, |
| 11 | with the other types of jobs, particularly if you've been in |
| 12 | the United States for 40 years, that you have to pay taxes. |
| 13 | And clearly, this type of device is one that will help people |
| 14 | avoid paying taxes, or essentially cheating the government. |
| 15 | The Court also looks at the need for the sentence to |
| 16 | reflect the seriousness of the offense.  The Court finds that |
| 17 | you were involved in this type of activity for an extended |
| 18 | period of time.  I think the government's represented |
| 19 | approximately nine to ten years that you were involved.  The |
| 20 | Court also looks at the fact that you took numerous steps to |
| 21 | commit the activities.  The Court finds that these types of |
| 22 | acts all constitute aggravating circumstances. |
| 23 | The Court also needs to impose a sentence that will |
| 24 | provide just punishment.  The Court notes that, as you've |
| 25 | represented, you've been here for a long time.  You clearly |

USA v. Yin, 4/14/17

1   knew that you had to pay taxes.  And the fact that you were

2   selling or making it easier for someone else to acquire these

3   devices lets the Court know that, even though you knew it was

4   illegal, you still proceeded to engage in this type of

5   activity, and the Court comes to the conclusion that the reason

6   for that was one primary reason, and that was greed.  You

7   continued to receive the benefit, you continued to have

8   customers, you continued to assist and facilitate other

9   individuals.  And that greed was a motivating and driving force

10  in this entire operation.

11       The Court also looks at the need to afford adequate

12  deterrence to criminal conduct.  Now, you've made

13  representations, or your lawyer's made suggestions, of other

14  ways to cause deterrence, such as you providing speaking

15  engagements, or you doing community activities.  But the Court

16  believes that the biggest way of getting someone else's

17  attention and letting other restaurant owners know that you

18  can't participate in this type of activity, that you can't have

19  double sets of books, that you can't cheat the government, that

20  there will be consequences, that's the type of deterrence the

21  Court believes will have the greatest impact for this type of

22  violation.

23       I'm not concerned about you being involved in other

24  criminal activity.  Because as I've indicated, most of your

25  criminal activity has been dated, and it was years ago, so I

USA v. Yin, 4/14/17

```
1    don't see that there's a need to try and protect the community
2    from you.  I don't see the need for any type of education,
3    training, or additional treatment due to the fact of your
4    sentencing.
5        The Court does look at the issue, however, of sentencing
6    disparity.  And the Court does believe that there are some
7    similarities between what you and Ms. Wong did, but the Court
8    sees the big difference is the impact that you had, and the
9    volume of people that you were involved with, and the large
10   numbers of money that was not paid to the government because of
11   your specific activity.  I don't see the volume as close to
12   Ms. Wong, and I don't see the comparability as represented by
13   your lawyer as being the same.
14       I've also gone through the variety of different summaries
15   of other cases where other individuals received straight
16   probation.  I suspect if I asked the government to provide,
17   although they didn't, an extensive or exhaustive list of other
18   courts around this country who have given harsh penalties for
19   similar type of offenses, there would be a laundry list of
20   similar type of circumstances where judges in other
21   jurisdictions gave harsher penalties, so that balances out.
22   I'm also not the beneficiary, from the details and specifics,
23   of all that goes into those other sentencing proceedings.  I
24   don't know the criminal history, I don't know what those people
25   were doing, and I can't make that determination from a short
```

USA v. Yin, 4/14/17

1   paragraph.  It's helpful information, it's insightful, in terms
2   of what's gone on around the country, but the Court doesn't
3   find that that's the sole determining factor.

4        So with all these considerations, I will first place you
5   on a three-year term of supervised release.  You'll be subject
6   to the standard and special conditions of supervised release
7   exactly as stated in the pre-sentence report.

8        The Court also recognizes that fines could be imposed, but
9   in light of the amount of restitution that's being sought by
10  the government, the Court will not impose any fine, but I will
11  impose a $200 special assessment fine for both counts.  That
12  amount is due immediately.

13       Now, it's my understanding that restitution has been
14  agreed, and I want to confirm with counsel for the defendant
15  that that's an accurate representation.

16       Is that correct, Counsel?

17            MR. DAVIS:  Yes, Your Honor.

18            THE COURT:  And that's in accordance with the terms
19  as reflected in the plea agreement between the parties; is that
20  correct?

21            MR. DAVIS:  Yes, Your Honor.

22            THE COURT:  All right.  I will order restitution in
23  the amount of $3,445,589.  I think that's the -- I think
24  there's 50 cents, also; is that correct, Counsel?

25            MS. ROE:  It is, Your Honor.

USA v. Yin, 4/14/17

```
 1              THE COURT:  So that's the total restitution that will
 2    be included.
 3         Having imposed all the other conditions, the only issue is
 4    the issue of custodial time.
 5         Sir, I think the government's recommendation and
 6    probation's recommendation is a little bit harsh.  And the
 7    reason I make that determination is because that's a guideline
 8    calculation.  The guidelines are advisory for the Court, for
 9    the Court to consider, but the Court doesn't necessarily have
10    to use the guidelines as a sole determining factor for this
11    Court to look at.  I've identified all the other factors and
12    believe the appropriate punishment in this case should be 18
13    months.  And you'll be permitted to self-surrender.
14         Now, I want to have your promise and affirmation that
15    you'll receive a notice from probation, and that you will
16    appear and report as directed.  Do I have your promise or
17    affirmation, sir, that when you receive that letter, you'll
18    report to the Bureau of Prisons as directed?
19              MR. DAVIS:  Your Honor, if I may?
20              THE COURT:  Yes.
21              THE DEFENDANT:  I promise.
22              THE COURT:  All right.  Counsel for the government,
23    do you have any basis to challenge the Court's determination?
24              MS. ROE:  No, Your Honor.
25              THE COURT:  Counsel for the defense, do you have any
```

USA v. Yin, 4/14/17

1    basis to challenge the Court's determination?

2              MR. DAVIS:  No, Your Honor.

3       Is the Court taking recommendations in terms of where --

4              THE COURT:  Yes.

5              MR. DAVIS:  May I suggest the Sheridan facility,

6    Oregon, for Mr. Yin?

7              THE COURT:  Yes.  And I'll add to that, Counsel, "or

8    as near to family as possible," if that's appropriate.

9              MR. DAVIS:  Thank you very much, Your Honor.

10             THE COURT:  All right.  Now, I want to make sure that

11   Mr. Yin understands.  I've included a recommendation for

12   Sheridan.  I can't control the Bureau of Prisons in terms of

13   where you actually serve your sentence.  They make that

14   determination.  I can only make a recommendation.  Oftentimes,

15   defendants leave this court and believe that the judge said

16   where I'm supposed to serve my sentence.  I can't control them.

17   It's merely a recommendation.

18       With that, I believe the overall sentence imposed is

19   reasonable, sufficient, but no more than necessary to carry out

20   the objectives of the sentencing process.

21       Now, while your lawyer is reviewing that document, I want

22   to explain to you your rights on appeal.  And it's very

23   important that you pay close attention, because at the end of

24   my explanation of rights, I'm going to ask if you understand

25   these rights.

USA v. Yin, 4/14/17

1    Under Paragraph 14 of the plea agreement, you waived your

2    rights on appeal.  Any rights you had on appeal are exactly as

3    stated in that document.  In addition to those rights, I wish

4    to advise you that you have the right to challenge your

5    lawyer's effectiveness.  If you wish to appeal this sentence,

6    it's important that you tell your lawyer that's exactly what

7    you wish to do.  He can explain to you any issues that are

8    appealable and any issues that might survive.

9    Now, if you wish to appeal the sentence and you cannot

10   afford the filing fee for the Court of Appeals, you can ask me

11   to waive it, and I'll direct the court clerk -- Counsel?

12             MS. ROE:  I'm sorry.

13             THE COURT:  -- and I'll direct the court clerk to

14   prepare a notice of appeal upon your request, at no cost to

15   you.  With few exceptions, any notice of appeal must be filed

16   within 14 days of the entry of judgment.

17   Lastly, the waiver does not preclude you from bringing an

18   appropriate motion, pursuant to Title 28, United States Code,

19   Section 2241, to address the conditions of your confinement, or

20   the decisions of the Bureau of Prisons regarding the execution

21   of your sentence.

22   Do you understand each of these rights, sir?

23             THE DEFENDANT:  Yes, Your Honor.

24             THE COURT:  Counsel, now you can review the judgment,

25   and you may confer.

USA v. Yin, 4/14/17

```
 1              MS. ROE:  If I may approach?

 2              THE COURT:  You may.

 3        I take it there are no counts to be dismissed, Counsel?

 4              MS. ROE:  That's correct.

 5              THE COURT:  Counsel, I'm checking the box on Page 2

 6   where it indicates, "The defendant shall surrender for service

 7   of sentence at the institution designated by the Bureau of

 8   Prisons, as notified by the probation or pretrial services

 9   office."

10              MS. ROE:  Thank you, Your Honor.

11              MR. DAVIS:  Thank you, Your Honor.

12              THE COURT:  Counsel, I've reviewed the judgment.  It

13   does reflect my oral ruling, and I've signed it.

14        If there's nothing further, this concludes this matter.

15   Good luck to you, Mr. Yin.

16        We're in recess.

17                        (Recess)

18                (End of requested transcript)

19                        *   *   *

20        I certify that the foregoing is a correct transcript from

21   the record of proceedings in the above matter.

22

23   Date:  4/14/17                    Andrea Ramirez

24                          _____

25                          Signature of Court Reporter
```